PEOPLE v LOPEZ

Docket No. 314953. Submitted June 10, 2014, at Detroit. Decided June 19, 2014, at 9:00 a.m. Leave to appeal denied, 497 Mich ___.

Jorge Lopez was convicted by a jury in the Wayne Circuit Court of armed robbery, assault with intent to rob while armed, possession of a firearm during the commission of a felony (felony-firearm), unlawful possession of a firearm by a felon, and carrying a concealed weapon. The court, James A. Callahan, J., sentenced defendant as a fourth-offense habitual offender to concurrent terms of 35 to 55 years in prison for the robbery, assault, felon-in-possession, and concealed-weapon convictions, plus a consecutive term of 2 additional years in prison for the felony-firearm conviction. Defendant appealed.

The Court of Appeals *held*:

1. The sentencing court must sentence the defendant to a minimum sentence within the range determined by scoring the sentencing guidelines unless the court decides to depart from the guidelines. If the court wishes to depart from the guidelines, it must articulate substantial and compelling reasons for departing that are objective and verifiable, keenly attract the court's attention, and are of considerable worth in deciding the terms of the sentence. The court is not required to score the guidelines for and sentence the defendant on each of his or her concurrent convictions if the court properly scored and sentenced the defendant on the conviction with the highest crime classification because, under MCL 771.14(2)(e), presentence reports and guidelines calculations are only required for the conviction with the highest crime classification. Although § 14, on its own, applies only to the probation department, MCL 777.21(2) states that the sentencing court must score the offenses in multiple-offense situations subject to how the probation department does so. The rationale for this legislative scheme is fairly clear because, except in possibly an extreme and tortured case, the guidelines range for the conviction with the highest crime classification will be greater than the guidelines range for any other offense. Given that the sentences are to be served concurrently, the guidelines range for the highest-crime-class offense would subsume the guidelines range for lower-

crime-class offenses and there would be no tangible benefit resulting from establishing guidelines ranges for the lower-crime-class offenses. Courts, however, must be cognizant of the statutory maximums for each conviction and ensure that each individual sentence, irrespective of the guidelines calculations used, does not exceed its statutory maximum. In this case, because the sentences for defendant's lower-crime-class offenses were to be served concurrently with the highest-crime-class-felony sentence, the guidelines did not need to be scored for the lower-crime-class offenses, and there was no departure from the sentencing guidelines. Further, defendant's maximum sentences of 55 years in prison for the lower-crime-class offenses did not exceed the statutory maximum for those offenses because defendant was sentenced as a habitual offender under MCL 769.12(1)(b).

2. A defendant is guaranteed the right to the effective assistance of counsel under both the United States and Michigan Constitutions. In this case, defendant argued that his attorney erred by failing to investigate how the police learned of his whereabouts before his arrest, but defendant failed to establish the relevance of the information and, thus, failed to establish how his attorney's conduct was objectively unreasonable.

3. The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. In light of the testimony of the two complaining eyewitnesses, the evidence presented at trial weighed in favor of defendant's guilt, and defendant was not entitled to relief.

Affirmed.

GLEICHER, J., concurring in part and dissenting in part, agreed with the majority's resolution of defendant's challenges concerning the great weight of the evidence and ineffective assistance of counsel, but disagreed with the majority's conclusion that defendant did not need to be separately sentenced for each conviction. The language of MCL 777.21(2) compels the trial court to score the sentencing guidelines applicable to each conviction. MCL 771.14(2)(e)(*ii*) and (*iii*), on which the majority rely, concern the sentencing duties of the probation department, not the sentencing court. By failing to separately score the guidelines for each conviction, sentencing courts may inadvertently impose departure sentences. Judge GLEICHER would have remanded the case for guidelines calculation and separate sentencing for each conviction.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Valerie M. Steer*, Assistant Prosecuting Attorney, for the people.

Jorge Lopez, *in propria persona*, and *Daniel J. Rust* for defendant.

Before: DONOFRIO, P.J., and GLEICHER and M. J. KELLY, JJ.

DONOFRIO, P.J. Following his jury trial, defendant was convicted of all five crimes charged: Count I—armed robbery, in violation of MCL 750.529; Count II—assault with intent to rob while armed, in violation of MCL 750.89; Count III—possession of a firearm during the commission of a felony (felony-firearm), in violation of MCL 750.227b; Count IV—unlawful possession of a firearm by a felon, in violation of MCL 750.224f; and Count V—carrying a concealed weapon, in violation of MCL 750.227. The court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 35 to 55 years in prison for Counts I, II, IV, and V, plus a consecutive term of 2 additional years for Count III.

On appeal, defendant challenges the sentencing court's failure to individually score the sentencing guidelines, MCL 777.1 *et seq.*, for each of his convictions and its failure to sentence him in accordance with the guidelines range applicable to each conviction. Defendant also filed a brief under Standard 4 of Supreme Court Administrative Order No. 2004-6, asserting that he is entitled to a new trial because the jury's verdict was against the great weight of the evidence and that

both his trial and appellate counsel provided him ineffective legal assistance. Finding no merit to any of these arguments, we affirm.

### I. THE SENTENCING GUIDELINES AND LOWER-CRIME-CLASS FELONIES

Defendant argues that the sentencing court erred when it sentenced him on all his felonies in accordance with the sentencing guidelines for the most serious conviction. He reasons that scoring and calculating the guidelines for the other convictions would have resulted in a lower guidelines range for those convictions, which results in his imposed sentences being illegal because the court did not justify any upward departure. We disagree.

The standard of review for sentencing decisions was set forth in *People v Babcock*, 469 Mich 247, 264-265; 666 NW2d 231 (2003):

> [T]he existence or nonexistence of a particular factor is a factual determination for the sentencing court to determine, and should therefore be reviewed by an appellate court for clear error. The determination that a particular factor is objective and verifiable should be reviewed by the appellate court as a matter of law. A trial court's determination that the objective and verifiable factors present in a particular case constitute substantial and compelling reasons to depart from the statutory minimum sentence shall be reviewed for abuse of discretion. [Quotation marks omitted.]

Michigan's sentencing guidelines calculations only affect a defendant's minimum sentence, while a defendant's maximum sentence is limited by statute. *People v McCuller*, 479 Mich 672, 677; 739 NW2d 563 (2007); *People v Drohan*, 475 Mich 140, 164; 715 NW2d 778 (2006). The sentencing court must sentence the defendant to a minimum sentence within the guidelines

range unless it decides to depart from the guidelines. MCL 769.34. If a trial court wishes to impose a minimum sentence outside the guidelines range, it must articulate substantial and compelling reasons for departing that are objective and verifiable, keenly attract the court's attention, and are of considerable worth in deciding the terms of the sentence. *Babcock*, 469 Mich at 257.

Defendant does not dispute that the court correctly scored the guidelines and sentenced defendant as a III-F offender for armed robbery, which is a Class A felony, MCL 777.16y, to incarceration for 35 to 55 years.[1] Rather, defendant argues that the trial court was required to sentence him on his felon-in-possession-of-a-firearm and carrying-a-concealed-weapon convictions—both of which are Class E felonies, MCL 777.16m—using the sentencing guidelines for Class E felonies. We are bound by this Court's decision in *People v Mack*, 265 Mich App 122; 695 NW2d 342 (2005), which addressed this exact issue. In *Mack*, we held that the trial court was not required to independently score the guidelines for and sentence the defendant on each of his concurrent convictions if the court properly scored and sentenced the defendant on the conviction with the highest crime classification.[2] *Id.* at 126-130. The *Mack* Court reasoned

---

[1] Defendant's minimum sentence of 35 years in prison, or 420 months in prison, falls within the minimum-sentence guidelines range of 135 to 450 months in prison for a fourth-offense habitual offender. See MCL 777.21(3)(c); MCL 777.62.

[2] *Mack* was later called into question in *People v Johnigan*, 265 Mich App 463, 470; 696 NW2d 724 (2005) (opinion by SAWYER, J.), in which the lead opinion criticized *Mack*'s failure to properly interpret MCL 777.21(2). The lead opinion in *Johnigan* concluded that *Mack* was erroneous because at the time *Mack* was decided, MCL 777.21(2) stated, " 'If the defendant was convicted of multiple offenses, subject to section 14 of *chapter IX*, score each offense as provided in this part.' " *Id.* (emphasis added). The lead opinion observed that § 14 of Chapter IX was

that, when sentencing on multiple concurrent convictions, the guidelines did not need to be scored for the lower-crime-class offenses because MCL 771.14(2)(e) provides that presentence reports and guidelines calculations were only required "for the highest crime class felony conviction."[3] *Id.* at 127-128, citing MCL 771.14(2)(e). The rationale for this legislative scheme is fairly clear because, except in possibly an extreme and tortured case, the guidelines range for the conviction with the highest crime classification will be greater than the guidelines range for any other offense. Given that the sentences are to be served concurrently, the guidelines range for the highest-crime-class offense would subsume the guidelines range for lower-crime-

---

MCL 769.14, which was inapplicable to *Mack*. *Id*. The lead opinion, however, noted that if MCL 777.21(2) had referred to "§ 14 of *chapter XI* (MCL 771.14)" instead of Chapter IX, then the author would have agreed with *Mack*'s conclusion. *Id*. at 471 (emphasis added).

*Johnigan*, however, does not compel us to deviate from *Mack*. First, the opinion's criticism of *Mack* was nonbinding dicta because it was not necessary to the resolution of the case. See *Dessart v Burak*, 252 Mich App 490, 496; 652 NW2d 669 (2002). Second, the Legislature, after the *Johnigan* decision was issued, amended MCL 777.21(2) to refer to Chapter XI instead of Chapter IX. See 2006 PA 655. Thus, with the amendment of MCL 777.21(2), the lead opinion in *Johnigan* now fully supports *Mack*'s holding. *Johnigan*, 265 Mich App at 471 (opinion by SAWYER, J.).

[3] The dissent criticizes our and the Mack Court's reliance on MCL 771.14(2)(e), but as the dissent recognizes, MCL 777.21(2) states that the court must, in a multiple-offense situation, "subject to section 14 of chapter XI [MCL 771.14], score each offense as provided in this part." (Emphasis added.) We agree and acknowledge that Chapter XI (including § 14 of Chapter XI), on its own, only applies to the probation department. But when MCL 777.21, which applies to the sentencing court, states that the court is to score offenses subject to how the probation department does so, it then necessarily incorporates those terms into the court's obligations. See Johnigan, 265 Mich App at 471. Otherwise, the language, "subject to [MCL 771.14]" would serve no purpose and be rendered nugatory, which is disfavored. People v Hershey, 303 Mich App 330, 336; 844 NW2d 127 (2013).

class offenses, and there would be no tangible reason or benefit in establishing guidelines ranges for the lower-crime-class offenses. Therefore, because the sentences for defendant's lower-crime-class offenses were to be served concurrently with the highest-class-felony sentence, the Class E guidelines did not need to be scored and there was no departure.

We caution sentencing courts, when imposing concurrent sentences, to remain cognizant of any statutory maximums for each conviction and to ensure that each individual sentence, irrespective of any guidelines calculations used, does not exceed its statutory maximum. In this case, defendant's maximum sentences of 55 years in prison for his Class E felony convictions did not exceed the statutory maximum. Normally, the statutory maximum for these offenses is five years. MCL 750.224f(5); MCL 750.227(3). However, defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, which elevated those statutory five-year maximums to life. Specifically, MCL 769.12(1)(b) provides that if the base offense normally is punishable by a maximum term of five years or more, then "the court . . . may sentence the person to imprisonment for life or for a lesser term." Therefore, the imposed sentences did not run afoul of any legislative maximum.

Further, we also question, like the *Mack* Court did, "whether a sentence for a conviction of the lesser class felony that is not scored under the guidelines pursuant to [MCL 771.14(2)(e)(*ii*) and (*iii*)] could permissibly exceed the sentence imposed on the highest crime class felony and remain proportional." *Mack*, 265 Mich App at 129. But because defendant's sentences for his lower-crime-class felonies did not exceed those imposed for his highest-crime-class felonies, we need not decide that question. See *id*.

II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant claims that he received ineffective assistance of trial and appellate counsel. We initially note that defendant's challenge to his trial counsel was not preserved because he did not move for a new trial or for a *Ginther*[4] hearing. See *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). He did preserve his challenge to the effectiveness of his appellate counsel by raising it in his Standard 4 brief.

> Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record. [*People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (citations and quotation marks omitted).]

A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

The Court uses the same legal standard for ineffective assistance of counsel when scrutinizing the performance of trial counsel and appellate counsel. *People v Uphaus (On Remand)*, 278 Mich App 174, 186; 748 NW2d 899 (2008). Although defendant is guaranteed the right to counsel under both the United States Constitution, US Const, Am VI, and Michigan Constitution, Const 1963, art 1, § 20, defendant bears a heavy

---

[4] People v Ginther, 390 Mich 436, 443; 212 NW2d 922 (1973).

burden in establishing "that counsel's performance was deficient and that he was prejudiced by the deficiency." *People v Meissner*, 294 Mich App 438, 458; 812 NW2d 37 (2011). The crux of this test is to determine whether any mistakes effectively deprived defendant of the right to a fair trial. *Id*. at 459.

The United States Supreme Court has set forth a two-prong test to determine whether counsel was ineffective in a given case. First, defendant must prove that his trial counsel failed to meet an objective standard of reasonableness based on "prevailing professional norms." *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, defendant must establish prejudice, which is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Defendant argues that his appellate counsel was ineffective, but defendant fails to meet the heavy burden of establishing the claim. Defendant does not identify any specific legal issue that his appellate counsel failed to raise on appeal. Defendant's failure to properly argue the merits of the issue results in it being abandoned. *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012). Moreover, to the extent that defendant argues that appellate counsel should have raised the issue of trial counsel being ineffective, because defendant raises this issue in his Standard 4 brief, any possible error committed by his appellate counsel was cured.

Our review of defendant's challenge to the effectiveness of his trial counsel is limited to mistakes apparent on the record. *Matuszak*, 263 Mich App at 48. It appears that defendant is arguing that his attorney erred by failing to investigate how the police learned of his whereabouts before his arrest, asserting that the anonymous informant had an improper motive to lead

the police to his location. But defendant does not establish how this purported evidence would have affected the outcome of the trial. How the police came to arrest and charge defendant is irrelevant to defendant's guilt or innocence. Because defendant failed to establish the relevance of this matter, he has not established how his attorney's conduct was objectively unreasonable. Moreover, defendant cannot show prejudice from this purported error because the most compelling evidence was the eyewitness testimony, which would not have been affected or impeached by evidence relating to how the police ultimately located defendant.

### III. GREAT WEIGHT OF THE EVIDENCE

Defendant finally claims in his Standard 4 brief that the jury's verdict was against the great weight of the evidence. Because defendant did not move for a new trial before filing the appeal, this argument is unpreserved for appellate review. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). Unpreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights. *Id*.

At trial and during a police lineup, the two complaining eyewitnesses, Sharon Fritz and Amber Sebastiani, clearly identified defendant as the individual who entered the bar and robbed them that night. They reported that defendant, along with a masked man, entered the bar while it was closed, pulled out a gun, pointed it at them, and repeatedly said "money." Fritz and Sebastiani claimed that defendant put his gun to Fritz's head and forcefully stole her gun after she tried to get it in order to defend herself. They also testified that defendant attempted to shoot them. Sebastiani said that she physically struggled with defendant to

stop him from shooting them, and that defendant shoved Fritz down onto stairs during the fray. They claimed that defendant stole Fritz's gun by taking it with him when he fled the bar. Both Fritz and Sebastiani testified consistently with each other, and defendant did not offer any evidence that impeached their credibility or established inconsistencies. At the end of the trial, the parties stipulated that defendant was not allowed to be in possession of a firearm because of his status as a convicted felon.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.* at 218-219. In light of the evidence just discussed, the evidence did not heavily preponderate against the verdict, and defendant has failed to demonstrate any plain error. The evidence at trial universally weighed in favor of defendant's guilt for all of the offenses. Accordingly, defendant's claim fails.

Affirmed.

M. J. KELLY, J., concurred with DONOFRIO, P.J.

GLEICHER, J. (*concurring in part and dissenting in part*). I concur with the majority's resolution of defendant's great weight of the evidence and ineffective assistance of counsel challenges, but respectfully dissent from the majority's conclusion that defendant need not be separately sentenced for all convictions. In my view, MCL 777.21(2) compels the trial court to score the sentencing guidelines applicable to each conviction: "If the defendant was convicted of multiple offenses, subject to [MCL 771.14], *score each offense* as provided in this part." (Emphasis added.)

The majority rests its holding on MCL 771.14(2)(e)(*ii*) and (*iii*), which fall within the "probation" chapter of the Code of Criminal Procedure. These subparagraphs set forth the sentencing duties assigned to the probation department, not the sentencing court.

Regardless of the probation department's responsibility to prepare presentence investigation reports and to score sentencing guidelines, the sentencing court bears an independent obligation to pass sentence in accordance with the statutory sentencing guidelines. See MCR 6.425(D) and (E). "A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." MCL 769.34(3). As Justice Markman's dissenting statements in *People v Warren*, 485 Mich 970 (2009), and *People v Stone*, 495 Mich 984 (2014), highlight, withholding separate scoring for each conviction means that by default, defendants may receive inadvertent departure sentences. I would remand for guidelines calculation and separate sentencing for each conviction.