# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIMOTHY RONALD HARE,

Defendant-Appellant.

UNPUBLISHED
October 12, 2017

No. 333876
Saginaw Circuit Court
LC No. 15-041631-FC

Before: TALBOT, C.J., and O'CONNELL and O'BRIEN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of one count of first-degree criminal sexual conduct (CSC I), MCL 750.520b(2)(b) (victim less than 13 years of age, defendant 17 years of age or older) and two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(b) (sexual contact with victim at least 13 but less than 16 years of age and actor related). The trial court sentenced defendant to 25 to 50 years' imprisonment for the CSC I conviction and 8 to 15 years' imprisonment for the two CSC II convictions. We affirm.

Before trial, defense counsel moved for the appointment, at court expense, of an expert witness "in the area of clinical psychology, particularly as it relates to the forensic interviewing protocol and reporting characteristics of minors alleging sexual assault." The trial court granted the motion but capped payment at $1,500. Defense counsel later filed a second motion for appointment of an expert and explained to the trial court that the original expert witness had declined to take the case for less than $4,000. According to defense counsel, he had located a different expert witness, Dr. Daniel H. Swerdlow-Freed, who, for a quoted fee of $3,000, was willing to review the victim's three interviews, the transcripts of those interviews, and all the discovery materials provided to the defense, and then consult with and advise defense counsel as to whether child protective services followed proper forensic interview protocols when it interviewed the victim. Defense counsel indicated that the quoted fee would "not include trial testimony, should it be necessary." Defense counsel requested that the trial court appoint Dr. Swerdlow-Freed "as an expert witness for the defense in the area for Forensic Interview Protocol, and authorize payment to him of $3,000.00 from County funds at County expense." The trial court granted defendant's request to increase his allowable expert-witness fee, approving "a maximum fee of $3,000.00 for . . . reviewing the discovery materials and DVD's and consulting with defense counsel and testifying at trial, if necessary."

-1-

On appeal, defendant argues that the trial court abused its discretion by imposing a maximum fee of $3,000 for a court-appointed expert to review the relevant discovery materials and testify at trial. We disagree. Following the trial court's order granting defense counsel's request for $3,000 in expert-witness fees, defense counsel never requested the trial court to authorize additional funds for the expert or otherwise indicated to the trial court that he wanted the expert to testify at trial. Accordingly, although "[t]his Court generally reviews a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert for an abuse of discretion," *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003), under these circumstances, the issue defendant raises on appeal was never before the trial court and is therefore reviewed for plain error affecting substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

When defense counsel initially moved for appointment of an expert to testify at trial at court expense, the trial court granted the motion. When defense counsel moved the trial court for an increase in the allowable expert-witness fee, the trial court granted the motion and authorized the requested funds. Had defense counsel requested additional funds to allow the expert to testify at trial, there is no indication on the record that the trial court would have been unreceptive to that request. Further, we note that the expert witness who testified on behalf of the prosecution indicated that she was paid a flat fee of $2,000 for her expert-witness services. The prosecution's expert not only reviewed the same materials reviewed by defendant's court-appointed expert, but the prosecution's expert also provided trial testimony for the quoted fee. Therefore, it appears that the $3,000 limit on expert-witness fees was not unreasonable. Accordingly, because the trial court granted defendant's motion to appoint an expert witness and authorized witness fees in the amount requested, and defendant never indicated that the authorized amount was insufficient, defendant has failed to establish that the trial court's decision to limit defendant's expert-witness fees to $3,000 was plain error.

Defendant relatedly argues that the trial court's decision to limit his expert-witness fees to $3,000 was error because it limited his defense. We disagree. "Without an indication that expert testimony would likely benefit the defense," the fact that an expert did not testify on a defendant's behalf is not reversible error. *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006). On the record before us, there is no indication that expert testimony would have likely benefitted defendant's defense. With court funds, defendant obtained an expert, who then reviewed the relevant materials for defendant's case. For unknown reasons, defense counsel did not see fit for the expert to testify at defendant's trial. On appeal, defendant has not provided any basis for us to conclude that defense counsel's decision was due to the trial court's $3,000 limit on expert-witness fees, and we see no reason based on the record to do so. It very well could have been that, after the expert reviewed the materials and discussed them with defense counsel, defense counsel decided that the expert's testimony would be detrimental to defendant's defense. Accordingly, without any indication that the expert could have, in fact, benefitted defendant's defense, we cannot conclude that the trial court plainly erred by limiting defendant's expert-witness fee to $3,000. See *id*. ("It is not enough for the defendant to show a mere possibility of assistance from the requested expert.").

In the alternative, defendant argues that defense counsel was ineffective for failing to request additional funds for the court-appointed expert beyond the $3,000 approved by the trial court. We disagree. "Whether a person has been denied effective assistance of counsel is a

mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014) (citation and quotation marks omitted). A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). Although defendant preserved this issue by filing a motion for remand in this Court, see *People v Ginther*, 390 Mich 436, 444-445; 212 NW2d 922 (1973), because that motion was denied, our review is limited to "mistakes apparent on the record," *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

In order to obtain a new trial based on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). When claiming ineffective assistance of counsel, the "defendant bears a heavy burden in establishing that counsel's performance was deficient and that [the defendant] was prejudiced by the deficiency." *Lopez*, 305 Mich App at 693-694.

The jury trial in this matter lasted three and a half days and involved the testimony of 14 witnesses. The prosecution presented seven witnesses, including the victim and an expert witness. The victim testified that defendant sexually abused her over the course of several years, and alleged that defendant's conduct included inappropriate touching, lewd comments and gestures, and three separate instances when defendant allegedly penetrated her vagina: once with his hand, once with a sex toy, and once with his penis. Defendant, who testified in his defense, denied the allegations and asserted that the victim fabricated the sexual-abuse allegations. This was in line with defense counsel's theory of the case, which was that the victim fabricated the sexual-abuse allegations because she wanted to move out of the family home and live with a couple that is now the victim's foster placement, the Demijohns. In support of this theory, defense counsel focused on the time that the victim spent with the Demijohns and the items that the Demijohns were able to buy for her. Defense counsel implied that the Demijohns had enticed the victim to leave her family home with lavish gifts and promises of helping to pay for her college education. Also, based on part of defendant's testimony, defense counsel accused Traci Demijohn of trying to convince the victim to run away from home and come live with her.

On appeal, defendant contends that an expert would have been able to explain why the victim fabricated the alleged sexual assault. However, defense counsel's strategy at trial centered on bringing the victim's credibility into question, which it sufficiently did by arguing that the victim was influenced by the Demijohns to fabricate the sexual-abuse allegations. Defense counsel then properly left the ultimate determination of the victim's credibility to the jury. See *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998) (stating that "issues of witness credibility are for the jury"). Defendant does not explain what additional testimony from an expert regarding the victim's credibility would have accomplished that defense counsel's trial strategy did not. Moreover, as previously discussed, nothing in the record supports that defendant's expert would have testified favorably towards defendant. Absent such a showing, this Court has no basis to conclude that counsel was ineffective for failing to call the expert. See

*People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (stating that a defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel"). In fact, after consulting with the expert, defense counsel may have decided not to call the expert because the expert's testimony would have been detrimental to defendant. See *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012) (stating that this Court must "affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did") (citation and quotation marks omitted). Accordingly, defendant has failed to establish that it was objectively unreasonable for defense counsel to not request additional funds for an expert beyond the $3,000 authorized by the trial court. And even if it was objectively unreasonable, defendant has failed to establish that the error was likely outcome determinative. *Trakhtenberg*, 493 Mich at 51.

Affirmed.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Colleen A. O'Brien