# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 15, 2018

Plaintiff-Appellee,

v

No. 333634
Wayne Circuit Court
LC No. 15-006190-01-FC

TIMOTHY TRESHAEN RICE,

Defendant-Appellant.

Before: MURRAY, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right[1] his conviction of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant, a second habitual offender, MCL 769.10, to concurrent prison terms of 30 to 60 years for his second-degree murder conviction and 40 to 60 months for his felon in possession conviction, and a consecutive sentence of the mandatory two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTS

This case involves the shooting death of Kevin Brown, which took place on July 4, 2015, outside a family gathering at Kevin's[2] grandmother's house on Hendrie Street in Detroit. Kevin's siblings, Kenneth and Tamika Brown, were both present at the gathering and both

---

[1] Defendant initially filed a delayed application for leave to appeal which this Court denied on November 3, 2016. *People v Rice*, unpublished order of the Court of Appeals, entered November 3, 2016 (Docket No. 333634). Defendant applied for leave to appeal to the Michigan Supreme Court and in lieu of granting leave to appeal, the Michigan Supreme Court remanded to this Court with instructions to treat defendant's delayed application for leave to appeal as an appeal as of right. *People v Rice*, 500 Mich 998; 895 NW2d 531 (2017). Accordingly, we consider this appeal as a timely-filed appeal as of right.

[2] Because this incident took place outside a family gathering and there are several witnesses named Brown, first names are used to avoid confusion.

testified at trial. Sixteen-year-old Kennetta Simmons, who is Kenneth's daughter (and Kevin's niece), was in a dating relationship with defendant at the time this shooting occurred. On the morning of July 4, 2015, Simmons agreed to lend her car, a four-door burgundy Saturn, to defendant and left the keys in it for him to pick up. Simmons got a ride to the family gathering with her father, Kenneth, that morning. That evening, Simmons called defendant and asked him to pick her up. Simmons told her family she was leaving, and Tamika followed her out to the car that was parked outside the house. Simmons got into the passenger side of the car and Tamika went to the driver's side and asked defendant, who was driving, who he was. Defendant's brothers were also in the back seat of the car and were laughing at Tamika's inquiries. Tamika had never met any of them. Simmons told Tamika that defendant was one of her cousins.

Defendant then drove with Simmons to drop one of his brothers off at home. Simmons received several calls from her family asking her to return to the party. Later, Simmons, defendant, and one of defendant's brothers returned to Hendrie Street in Simmons's car with Simmons driving and defendant in the front passenger seat. They parked on the street about three doors down from the house where the family was gathered. Simmons went into the house and remained there for a short period of time before leaving again. Simmons left the house through the front door and Kenneth and Kevin followed her because they were curious about who she was with. As Kevin and Kenneth approached the car, Kenneth observed defendant "hop over to the passenger side." Kenneth walked to the driver's side and told defendant to get out. As a verbal altercation ensued, defendant got out of the car slowly and told Simmons to open the trunk. The other man in the back of the car also got out slowly. Kevin tried to pick a fight with defendant, but Kenneth blocked him and said "come on bro chill I got this[,] chill." Kenneth testified that Kevin never touched defendant. Kenneth said both he and Kevin were upset to see a young man driving Simmons's car who they did not know.

Simmons opened the trunk and as defendant went to take something out of it, Kevin attempted to close it and told defendant he did not need whatever it was he was looking for. Defendant took a pair of jeans from the trunk and Kevin asked him what he had in the pocket. There was a gunshot and Kevin fell to the ground. Kenneth ran into the house to call 911. Defendant and his brother fled on foot and Simmons chased after them but was unable to keep up. Defendant turned and brandished the gun and shouted a threat at the witnesses before continuing to flee. Kevin was eventually transported by family vehicle to the hospital and later died as a result of his injuries. Based on witness interviews, the Detroit Police Department located and arrested defendant the next day.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues he was denied the effective assistance of counsel at trial. Specifically, defendant argues that counsel was ineffective for failing to call defendant's brother as a witness, failing to inspect Simmon's vehicle and present evidence regarding the vehicle, and for advising defendant not to testify. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *Id*. The trial court's

factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*. "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). In this case, the issue is unpreserved because defendant did not move for a new trial or for a *Ginther* hearing[3] below. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).[4]

"The Sixth Amendment [of the United States Constitution] . . . guarantees a criminal defendant's right 'to have the Assistance of Counsel for his defence.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting US Const, Am VI. "The Supreme Court of the United States has recognized that the right to counsel is the right to the effective assistance of counsel." *Id.* (quotation marks and citations omitted). "The right to the effective assistance of counsel is incorporated to the states by the Due Process Clause of the Fourteenth Amendment." *Id.* Further, Michigan's parallel constitutional provision, Const 1963, art 1, § 20, affords the same protection as the Sixth Amendment. *People v Pickens*, 446 Mich 298, 302; 521 NW2d 797 (1994). "The United States Supreme Court has set forth a two-prong test to determine whether counsel was ineffective in a given case." *Lopez*, 305 Mich App at 694.

> First, defendant must prove that his trial counsel failed to meet an objective standard of reasonableness based on 'prevailing professional norms.' " *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, defendant must establish prejudice, which is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 694. [*Lopez*, 305 Mich App at 694.]

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id.*

We turn first to defendant's claim that trial counsel ought to have called his brother, Joshua Ragland, to testify at trial. Aside from defendant's own May 31, 2016 affidavit in which he complained about trial counsel's decision not to call Ragland, the record does not yield any indication of what Ragland would have testified to and whether the testimony would have supported defendant's claim of self-defense. Without more, defendant's argument does not overcome the presumption that counsel's decision not to call Ragland as a witness amounted to sound trial strategy. Trial counsel may have reasonably determined that calling Ragland as a witness, and subjecting him to cross-examination by the prosecution, may not have been an advantageous strategic decision for defendant's case. Additionally, where the record is silent

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] In this Court defendant filed a motion seeking remand to the trial court for a *Ginther* hearing, which this Court denied. *People v Rice*, unpublished order of the Court of Appeals, entered December 21, 2017 (Docket No. 333634).

with regard to what Ragland would have testified about, defendant has also not established the factual predicate for his claim of ineffective assistance of counsel. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Next, defendant asserts that trial counsel's performance was objectively unreasonable where trial counsel discouraged defendant from testifying in his own defense. Before the trial court gave its final jury instructions, trial counsel questioned defendant on the record to ensure that defendant understood his right to testify. Specifically, the following colloquy took place between defendant and trial counsel:

> [*Trial Counsel*]. Mr. Rice, you and I have talked about your rights to testify at your trial; is that correct?
>
> [*Defendant*]. Correct.
>
> [*Trial Counsel*]. And I have advised you that it would not be in your best interest to testify; is that correct?
>
> [*Defendant*]. Correct.
>
> [*Trial Counsel*]. And I have also explained to you that even though I advised you that you shouldn't testify it is still your right to testify regardless of what I told you, do you understand that?
>
> [*Defendant*]. Yes.
>
> [*Trial Counsel*]. Okay. And it's your decision now not to testify; is that correct?
>
> [*Defendant*]. Correct.

After the trial court then questioned defendant, "[s]o it is your decision you don't want to testify?" defendant responded "[y]eah." The thrust of defendant's argument on appeal is that by discouraging defendant from testifying, trial counsel precluded defendant from presenting his theory that he acted in self-defense. This assertion is belied by the record. In support of the defense theory that defendant acted in self-defense, trial counsel vigorously and thoroughly questioned the prosecution's witnesses concerning the circumstances of the altercation leading up to defendant shooting Kevin. For example, trial counsel questioned Kenneth extensively about how he and Kevin were behaving when they confronted defendant outside the home on Hendrie. Trial counsel also questioned Simmons about how both Kevin and Kenneth were agitated when they confronted defendant, and about how Kevin threatened to punch defendant. Trial counsel also cross-examined Kevin's wife, Leslie Caldwell, about her observations of the confrontation between defendant and Kevin and Kenneth, and about how Kenneth and Kevin were behaving towards defendant. Accordingly, we are satisfied that the defense theory that defendant acted in self-defense in shooting Kevin was thoroughly presented to the jury. Additionally, trial counsel may have reasonably surmised, as a matter of trial strategy, that it was best not to call defendant as a witness and give the prosecution the opportunity to thoroughly cross-examine him concerning the defense theory that he shot Kevin in self-defense.

-4-

Finally, defendant's argument regarding trial counsel's decision to not introduce evidence about the configuration of Simmons's vehicle is without merit. According to defendant, the configuration of the vehicle does not require a person to open the hatch to retrieve items from the trunk because there is a "pass-through" in the rear seat. Specifically, defendant contends that if this evidence was introduced, "the prosecution witnesses' version of the shooting would have been called into question and reasonable doubt introduced if the jury had known this." Defendant does not elaborate further regarding how this evidence may have bolstered his defense. Even accepting defendant's assertions, multiple eyewitnesses testified that defendant, in a calm and deliberate manner, told Simmons to open the trunk and that he took his jeans, apparently holding a firearm, out of the trunk before shooting Kevin. At trial, defendant did not deny that he was the shooter; the defense theory was that he acted in self-defense. We disagree with defendant that details regarding the configuration of the vehicle, or the fact that defendant, or another person could have reached in through the back seat of the vehicle to access the trunk, would in any way have undermined the prosecution theory of the case.

### III. JURY INSTRUCTIONS—SELF-DEFENSE

Defendant next argues that the trial court erred by refusing to give the jury an instruction on self-defense. Our review of the October 30, 2015 trial transcript confirms that the trial court properly instructed the jury regarding defendant's theory at trial that he shot Kevin in self-defense. MCL 780.972. Accordingly, defendant's argument on appeal, solely challenging the trial court's alleged failure to instruct the jury in conformance with defendant's defense that he acted in self-defense, is without merit.

Affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood