*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. D. WRIGHT, Minor.

UNPUBLISHED
May 14, 2019

No. 345578
Wayne Circuit Court
Family Division
LC No. 15-520059-NA

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating her parental rights to the minor child, LDW, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical abuse), (g) (failure to provide proper care or custody), (h) (parent is imprisoned), (j) (reasonable likelihood that child will be harmed if returned to the home of parent), (k)(*iii*) (battering, torture, or other severe physical abuse), and (k)(*vii*) (voluntary manslaughter of the child's sibling). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This is the second case involving the termination of respondent's parental rights. In respondent's first termination case, her rights were terminated to her child, IM, based on the abuse and death of IM's sibling, IW.[1] Because of the abuse and death of IW, respondent pleaded guilty to voluntary manslaughter, MCL 750.321, and first-degree child abuse, MCL 750.136b(2). Respondent was sentenced to 8 to 15 years' imprisonment for the voluntary manslaughter conviction and 1 to 10 years' imprisonment for the first-degree child abuse conviction.

In the current matter, the Department of Health and Human Services ("DHHS") filed a petition to terminate respondent's and the unknown biological father's parental rights to LDW. At the preliminary hearing, the putative father appeared and stated that he was willing to establish paternity. The putative father and respondent signed an affidavit of paternity, and the

---

[1] *In re Beasley*, unpublished per curiam opinion of the Court of Appeals, issued September 15, 2016 (Docket Nos. 331422 and 331423).

trial court found that he was LDW's biological and legal father. LDW was placed with the father, and appeared to be doing well in his home. DHHS did not seek to terminate the father's parental rights.

At a combined adjudication and disposition hearing a Child Protective Services ("CPS") worker stated that she believed termination of respondent's parental rights was in the best interests of LDW because respondent was imprisoned because of the death of IW, which was the basis for the termination of her parental rights to IM. The CPS worker also stated that she believed the father was able to take care of and protect LDW. Respondent testified that she was imprisoned and that her earliest release date is 2025. Respondent stated that, while she was imprisoned, she made arrangements for her mother to look after LDW.

The trial court determined that it had jurisdiction over LDW based on respondent's prior termination of parental rights, child abuse leading to the death of her child, respondent's incarceration, and respondent's history of substance abuse and CPS involvement. The trial court also determined that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (h), (j), (k)(*iii*), and (k)(*vii*). The trial court further determined that termination of respondent's parental rights was in the best interests of LDW. In the trial court's order of adjudication, the trial court supported its best interests finding by stating:

> The Court takes into serious consideration mother's horrible parenting ability and general character, which present a substantial risk of harm to the child. Court further considers the nature and magnitude of the harm mother has caused and determines there is no value of maintaining a relationship between mother and [LDW]. Mother does not have the capacity to play a constructive role in the [sic] [LDW's] life.

Accordingly, the trial court terminated respondent's parental rights and continued LDW's placement with the father.

## II. STATUTORY GROUNDS

Respondent argues that none of the statutory grounds for termination were established by clear and convincing evidence. We disagree.

This Court reviews "for clear error a trial court's factual findings as well as its ultimate determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A trial court's decision "is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). "To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks omitted).

## A. MCL 712A.19b(3)(b)(*i*)

Respondent argues that the trial court clearly erred when it determined that LDW would suffer injury or abuse in the foreseeable future.

MCL 712A.19b(3)(b)(*i*) provides:

(3) The court may terminate the parental rights of a parent to a child if the court finds, by clear and convincing evidence . . .

* * *

(b) The child or a sibling of the child has suffered physical injuries or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home. [*In re Hudson*, 294 Mich App 261, 265; 817 NW2d 115 (2011), quoting MCL 712A.19b(3)(b)(*i*).]

Respondent did not attend the combined adjudication and disposition hearing because she was imprisoned for voluntary manslaughter and first-degree child abuse. Respondent's convictions stemmed from the death of her child, IW. The medical examiner determined that IW's death was a homicide, and that IW's cause of death was smothering. Additionally, the trial court took judicial notice of respondent's previous termination case, where the trial court determined that either respondent abused IW, or that respondent did nothing to stop the abuse. "Evidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App at 266. It was thus appropriate for the trial court to infer that LDW may suffer future abuse or injury based on the past abuse and ultimate death of IW. Therefore, there was clear and convincing evidence to support the terminations of respondent's parental rights under MCL 712A.19b(3)(b)(*i*).

## B. MCL 712A.19b(3)(j)

Respondent argues that she can provide emotional support and loving guidance to LDW while respondent is imprisoned, and that her mother can also help to provide proper care and custody.

MCL 712A.19b(3)(j) states that termination is proper where "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

[J]ust as incarceration alone does not constitute grounds for termination, a criminal history alone does not justify termination. Rather, termination solely because of a parent's past violence or crime is justified only under certain enumerated circumstances, including when the parent created an unreasonable risk of serious abuse or death of a child, if the parent was convicted of felony assault resulting in the injury of one of his own children, or if the parent

-3-

committed murder, attempted murder, or voluntary manslaughter of one of his own children. [*In re Mason*, 486 Mich at 165.]

Termination of respondent's parental rights was justified under MCL 712A.19b(3)(j) because respondent was convicted of voluntary manslaughter for the death of IW. Respondent does not dispute her conviction, but instead argues that she can still provide for LDW while respondent is imprisoned, and that her mother can care for LDW. However, the fact remains that respondent physically abused IW, caused numerous severe injuries, including broken bones and bruised organs. Respondent's abuse led to IW's death. Evidence of IW's abuse was evidence of how respondent could treat LDW. *In re Hudson*, 294 Mich App at 266. It was not clearly erroneous for the trial court to determine that LDW would be at risk of harm if returned to respondent.

## C. MCL 712A.19b(3)(k)(*iii*)

Respondent argues that the trial court clearly erred by terminating her parental rights under MCL 712A.19b(3)(k)(*iii*) because there was not clear and convincing evidence that LDW would be harmed if returned to respondent's care and custody.

MCL 712A.19b(3)(k)(*iii*) states that termination is proper if:

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

\* \* \*

(*iii*) Battering, torture, or other severe physical abuse.

Respondent pleaded guilty to first-degree child abuse and voluntary manslaughter arising from the death of IW. Before IW's death, the child was hospitalized for fractures to her ribs, both femurs, and both tibias, as well as vomiting and diarrhea. IW's injuries were classified by the hospital as nonaccidental. IW's injuries were certainly indicative of severe physical abuse. Evidence of IW's abuse was evidence of how respondent could treat LDW. *In re Hudson*, 294 Mich App at 266. Accordingly, there was clear and convincing evidence that respondent caused severe physical abuse to IW and that there was a reasonable likelihood that LDW would be harmed if returned to respondent.

## D. MCL 712A.19b(3)(k)(*vii*)

Respondent argues that there was not sufficient evidence that LDW would be harmed if returned to respondent's care.

MCL 712A.19b(3)(k)(*vii*) states that termination is proper where:

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

-4-

* * *

(*vii*) Voluntary manslaughter.

Respondent was convicted of voluntary manslaughter because of the death of IW. IW was smothered to death, and sustained multiple nonaccidental injuries before death. Evidence of how respondent treated IW is probative to how respondent may treat LDW. *In re Hudson*, 294 Mich App at 266. Therefore, there was clear and convincing evidence that respondent abused IW, was convicted of voluntary manslaughter for the death of IW, and that there was a reasonable likelihood that LDW would be harmed if returned to respondent's care.[2]

### III. BEST INTERESTS

The trial court did not clearly err when it determined that termination of respondent's parental rights was in the best interests of LDW.

Respondent argues that termination of her parental rights was not in the best interests of LDW because she could still provide support for LDW and because LDW was placed with her father. We disagree.

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012) (citations omitted). A trial court may consider a child's placement in a best-interests determination. *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009). "[O]nce a statutory ground [for termination] is established, a parent's interest in the care and custody of his or her child yields to the state's interests in the protection of the child." *Id*.

In determining that termination of respondent's parental rights was in the best interests of LDW, the trial court stated that respondent's "horrible parenting ability and general character . . . present a substantial risk of harm to [LDW]." The trial court also considered "the nature and magnitude of the harm [respondent] has caused and determined there is no value of maintaining a relationship between [respondent] and [LDW]." Finally, the trial court stated that respondent was not able to play a constructive role in LDW's life.

Termination of respondent's parental rights was in the best interests of LDW. The CPS worker believed that it was in the best interests of LDW to terminate respondent's parental rights because of IW's death. IW suffered severe nonaccidental injuries. Respondent's abuse of IW, or at the very least her failure to prevent the abuse, led to the death of IW. Given respondent's

---

[2] Considering that the trial court did not clearly err in finding clear and convincing evidence that four separate statutory grounds for termination existed, and because clear and convincing evidence of even one ground is sufficient, we need not consider the remaining grounds provided by the trial court. See *In re Brown/Kindle/Muhammad Minors*, 305 Mich App at 635.

history of abuse and deficient parenting skills, the trial court did not clearly err in finding that termination of respondent's rights was in LDW's best interests.

Respondent also argues that the trial court failed to consider LDW's placement with the father in its best interests determination. "[B]ecause 'a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a),' the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*. However, MCL 712A.13a(1)(j) defines "relative," and biological father is not included in the definition. See *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016). Accordingly, the trial court was not specifically required to evaluate LDW's placement with the father, as a "relative" placement in the best interests determination.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that her trial counsel failed to provide effective assistance of counsel when counsel failed to elicit testimony to show respondent's past loving relationship with IM. We disagree.

"The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings . . . ." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Claims of ineffective assistance of counsel are preserved by moving for a new trial or an evidentiary hearing to develop the record in support of the claim. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Respondent did not move for a new trial or an evidentiary hearing in the trial court. Therefore, this issue is unpreserved. See *id.*

The determination of whether a respondent has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*. "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Parents have a right to counsel in parental rights termination cases. *In re Williams*, 286 Mich App at 275-276. "The right to counsel includes the right to competent counsel." *In re Simon*, 171 Mich App 443, 447; 431 NW2d 71 (1988). For a successful ineffective assistance of counsel claim, "it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App at 85.

Respondent argues that her trial counsel was ineffective for failing to elicit testimony regarding her loving relationship with IM. However, the trial court took judicial notice of the facts from respondent's prior termination of parental rights case, which included testimony regarding respondent's relationship with IM. A court may take judicial notice of its own files and records. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). Because the trial

court was already aware of the testimony regarding respondent's bond with IM, it was not reasonably probable that any additional testimony elicited by respondent's counsel would have altered the result. Testimony from respondent regarding her relationship with IM would have likely been cumulative of her prior testimony. It is not reasonably probable that this cumulative testimony would have altered the trial court's decision to terminate respondent's parental rights, especially in light of the unrebutted evidence of respondent's severe abuse of IW.

## V. CONCLUSION

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan