*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN MICHAEL BARBER,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2019

No. 342517
Clinton Circuit Court
LC No. 2017-009885-FH

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), second or subsequent offense, MCL 333.7413(1), and of manufacturing methamphetamine, MCL 333.7401(2)(b)(*i*), second or subsequent offense, MCL 333.7413(1). The trial court sentenced defendant to serve concurrent prison terms of 5 to 40 years for each conviction. Defendant appeals by right. We affirm in part, vacate in part, and remand for resentencing.

## I. BACKGROUND

On August 3, 2017, at approximately 1:30 a.m., Officer Ethan Rennaker of the DeWitt Township Police Department observed a lit and unattended charcoal grill at the Town and Country Motel. Officer Rennaker knew this motel as an area where drugs were often used, sold, and manufactured. The unattended charcoal grill was in front of one of the motel rooms, and Officer Rennaker checked that room's registration. A "Michelle Schooler" and a "Kevin Smith" had rented the room. Officer Rennaker went to the room, and Schooler answered the door. Officer Rennaker could see that defendant was inside the room. Schooler and defendant exhibited signs of drug use and a strong chemical odor emanated from the room. Accordingly, Officer Rennaker contacted Deputy Matt Dedyne of the county's methamphetamine response team. Deputy Dedyne, who had received extensive training on the detection of methamphetamine, arrived at the motel sometime later and met with Officer Rennaker. Deputy Dedyne believed that the odor from the room was ammonia gas, a byproduct of manufacturing methamphetamine. Deputy Dedyne checked the National Precursor Log Exchange, a national

database that tracks pseudoephedrine purchases, and he found that both defendant and Schooler had recently purchased pseudoephedrine. Each also had numerous prior federal "compliance blocks," meaning that they had purchased the maximum amount of pseudoephedrine that may be purchased each month and were not permitted to purchase more.

Deputy Dedyne subsequently obtained a search warrant, contacted the rest of the county's methamphetamine response team, and executed the warrant at approximately 4:30 a.m. Defendant and Schooler were still inside the room. Deputy Dedyne found every piece of equipment and every ingredient, except pseudoephedrine, necessary to manufacture methamphetamine. This included four "one pots," containers used to house the chemical reaction process; glass jars, used in a later stage of the "cook" process; coffee grinders and filters, used to break down pseudoephedrine pills; a gas generator; sulfuric acid; and lighter fluid. Additionally, five mobile phones were discovered, one of which belonged to defendant. Police arrested both defendant and Schooler.

The prosecutor filed a felony complaint against defendant containing two charges: Count I, operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), and Count II, manufacturing methamphetamine, MCL 333.7401(2)(b)(*i*). In the copy of the complaint in the trial court file, however, a pen was used to cross out Count II. At defendant's preliminary examination, only Count I was addressed, and defendant was bound over to the circuit court on that charge. On the same day as the preliminary examination, the prosecutor filed a felony information containing both Count I and Count II. Defendant proceeded to trial and the jury found him guilty of both offenses.

## II. ANALYSIS

### A. BINDOVER

Defendant first argues that Count II, manufacturing methamphetamine, was improperly included in the felony information because there was no preliminary examination on that charge and, accordingly, defendant was never properly bound over to the circuit court on that charge. The prosecutor has conceded error and requests that this Court vacate defendant's conviction on that count. We agree that plain error occurred when defendant was convicted of an offense on which he was never bound over to the circuit court. MCL 767.42(1). Therefore, we vacate defendant's conviction and sentence for Count II, manufacturing methamphetamine.

### B. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence at trial was insufficient to support his conviction on Count I, operating or maintaining a methamphetamine laboratory. We disagree.

"This Court reviews de novo a claim that evidence at trial was insufficient to support a conviction." *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). When an appellate court reviews the evidence supporting a conviction, "factual conflicts are to be viewed in a light favorable to the prosecution." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). The appellate court must "view the evidence in a light

most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. Evidence can be circumstantial or it may be drawn from reasonable inferences. *Solmonson*, 261 Mich App at 661. The inferences may not, however, be based on mere speculation. *People v Lane*, 308 Mich App 38, 59; 862 NW2d 446 (2014).

MCL 333.7401c states in pertinent part:

(1) A person shall not do any of the following:

(a) Own, possess, or use a vehicle, building, structure, place, or area that he or she knows or has reason to know is to be used as a location to manufacture a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.

(b) Own or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.

(c) Provide any chemical or laboratory equipment to another person knowing or having reason to know that the other person intends to use that chemical or laboratory equipment for the purpose of manufacturing a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.

(2) A person who violates this section is guilty of a felony punishable as follows:

* * *

(f) If the violation involves or is intended to involve the manufacture of a substance described in section 7214(c)(ii),[1] by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

Upon review of the record, we conclude that there was overwhelming direct and circumstantial evidence to support defendant's conviction of operating or maintaining a methamphetamine laboratory. Deputy Dedyne, who had received specialized training in detecting and identifying methamphetamine, testified extensively concerning the methamphetamine manufacturing process, the ingredients needed, and the equipment typically used. Deputy Dedyne testified that everything needed to manufacture methamphetamine was present in the motel room where defendant was found. Deputy Dedyne gave his professional opinion that the motel room was being used as a methamphetamine laboratory and that the

---

[1] Section 7214(c)(ii) describes methamphetamine.

substances found in the motel room were indeed methamphetamine. Furthermore, numerous incriminating text messages were retrieved from defendant's cell phone, and Deputy Michael Leasher testified concerning the contents of those messages. Finally, another prosecution witness, Leslie Ann Stripling, testified that the name "Kevin Smith" was an alias used by defendant to rent the motel room because the motel had previously barred him. Deputy Dedyne testified that those wishing to avoid law enforcement often use fake names when renting motel rooms. Stripling also gave damaging rebuttal testimony concerning defendant's only witness, Schooler, who testified that defendant visited her to have sexual relations with her but not to participate in creating methamphetamine. From this evidence, a rational trier of fact could have found beyond a reasonable doubt that defendant operated or maintained a methamphetamine laboratory in the motel room.

## C. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that, even if the evidence was sufficient to submit the case to the jury, the guilty verdict on the charge of operating or maintaining a methamphetamine laboratory was against the great weight of the evidence. We disagree.

A defendant must move for a new trial to preserve the assertion that the jury's verdict was against the great weight of the evidence. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). Defendant failed to move for a new trial. Therefore, this issue is unpreserved, and we review defendant's challenge for plain error affecting his substantial rights. See *id*. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. at 696 (cleaned up). "Additionally, it is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (cleaned up).

As previously discussed, the prosecutor introduced sufficient direct and circumstantial evidence to show that defendant operated or maintained a methamphetamine laboratory. Although there was conflicting testimony at trial, such testimony "is an insufficient ground for granting a new trial." *Id*. Nothing in our review of the record convinces us that "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Lopez*, 305 Mich App at 696.

## D. RESENTENCING

Finally, defendant argues that the vacation of his conviction and sentence for Count II requires vacation of his sentence for his conviction of Count I and remand to the trial court for resentencing on Count I. We agree.

Defendant was properly convicted of operating and maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), second or subsequent offense, MCL 333.7413(1). The crime is ordinarily a 20-year felony. MCL 333.7401c(2)(f). An individual convicted of a second or subsequent offense, however, "may be imprisoned for a term not more than twice the term otherwise authorized." MCL 333.7413(1). Therefore, the crime was a 40-year felony. The trial court sentenced defendant to a term of 5 to 40 years in prison for this conviction.

When it scored the sentencing guidelines, the trial court assessed 10 points for prior record variable (PRV) 7, "subsequent or concurrent felony convictions." Ten points are assessed for PRV 7 if "[t]he offender has 1 subsequent or concurrent conviction." MCL 777.57(1)(b). Points are properly assessed under PRV 7 "if the offender was convicted of multiple felony counts or was convicted of a felony after the sentencing offense was committed." MCL 777.57(2)(a). The trial court based its scoring of PRV 7 on defendant's conviction of both Count I and Count II. Because defendant's conviction for Count II was invalid, these 10 points were improperly assessed for PRV 7. In total, the trial court assessed 30 points for the PRVs and 10 points for the offense variables. This placed defendant within the D-II grid for Class B felonies, MCL 777.63, resulting in a recommended minimum-sentence range of 51 to 85 months in prison. Without the 10 points improperly assessed for PRV 7, defendant's PRV points would total 20 instead of 30. This would place defendant within the C-II grid for Class B felonies, and his recommended minimum-sentence range would be 30 to 50 months in prison. MCL 777.63. When an error affects the applicable sentencing-guidelines range, a remand for resentencing is required. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006). Therefore, although we affirm defendant's conviction of Count I, operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), second or subsequent offense, MCL 333.7413(1), we vacate the sentence imposed by the trial court for that conviction and remand for resentencing.

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

-5-