# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 19, 2018

Plaintiff-Appellee,

v

No. 337458
Oakland Circuit Court
LC No. 2016-260193-FC

JUAN MAURICIO MORENO,

Defendant-Appellant.

Before: FORT HOOD, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*i*) (person at least 13 years of age but less than 16 years of age and member of the same household). Defendant was sentenced to 14 to 35 years' imprisonment for his two CSC-I convictions. We affirm.

## I. FACTS

This case arises from defendant sexually assaulting SR, a minor who lived with him in his home in Pontiac, Michigan. As relevant to this appeal, SR lived with defendant and defendant's wife, Laurie Moreno. Defendant and Moreno are not SR's biological parents, but SR moved in with them when she was three years old and lived with them ever since. When SR was approximately six or seven years old, defendant began to touch her vaginal area with his hands. SR told her principal and teachers, who spoke with Moreno. Moreno told the teachers that SR was lying and that defendant would not abuse SR. According to SR, her teachers did not believe her because she was so young. When SR was 10 years old, SR again told Moreno that defendant was abusing her. Moreno told SR, "Don't worry about it. You're probably just dreaming. He never did stuff to you."

When SR was approximately 13 years old, defendant began to have intercourse with her. Defendant assaulted SR "almost every other night." Generally, defendant would come home from work drunk, give SR a drink, and then have intercourse with SR, usually when Moreno was in the shower.[1] SR could tell when defendant returned from work whether he would sexually

---

[1] SR testified that Moreno normally took an hour long shower every night at 11:00 p.m.

-1-

assault her that night because he would look at her "a certain way." SR told defendant to stop, but he refused. SR testified that defendant sexually assaulted her more frequently than she could count. She recounted a specific time when Moreno was in the shower and defendant made SR come into his room. Defendant had SR take her clothes off, and touched and kissed her. Defendant then had intercourse with SR. SR testified, "It made me feel like it's my own dad. That I look up to a dad. And my dad's doing this to me. It hurted [sic] me." On August 13, 2016, when SR was 15 years old, SR texted her aunt, Cheryl Root, to come pick her up and Root subsequently took SR to the hospital. At the hospital, SR told the police about the sexual abuse. SR explained that she did not run away before because she felt she had nowhere to go.

Yvonne Pitris, a child protective services worker for the Department of Health and Human Services, interviewed defendant about SR's accusations. Defendant said that he knew having intercourse with SR was wrong. He admitted that he began sexually assaulting SR when she was 13 years old, and that it happened on several occasions. Defendant corroborated SR's statements that he usually assaulted SR when Moreno was in the shower. Throughout the interview, defendant continued to ask Pitris if having intercourse with SR would be okay if he and SR were the same age, because he was attracted to SR.

Oakland County Sheriff's Office Detectives Eric Tremonti and Mike Miller interviewed defendant regarding the allegations of sexual abuse. Detective Tremonti testified that defendant first denied SR's allegations. However, Detective Tremonti said, "in my opinion, in my experience and training, they were not strong denials. He was kind of unsure and kind of reacted inappropriately, through my experience." Defendant asked what kind of person SR would be to allow him to sexually abuse her. Nevertheless, Detective Tremonti testified that after initially denying the allegations of sexual abuse, defendant "made several statements along the lines of I probably did, or whatever [SR] said." When Detective Tremonti asked defendant if SR had told the truth, defendant answered that "it could have probably happened. It could have—maybe I was intoxicated . . . ." Detective Tremonti continued to question defendant, and defendant continued to admit that SR's accusations were true. He admitted to having intercourse with SR, though he could not remember how many times. Defendant told Detective Tremonti that he started sexually abusing SR when she was 13 years old. At the conclusion of the trial, defendant was found guilty of two counts of CSC-I. Defendant now appeals as of right.

II. ANALYSIS

Defendant first argues that trial counsel's performance fell below an objective standard of reasonableness because, though Dolores Ovalle-Ruiz, SR's aunt, spoke with his trial counsel and told him that she was willing to testify, trial counsel did not call her as a witness. Defendant also contends that he was prejudiced by trial counsel's ineffective assistance because he was deprived of a substantial defense—that SR was lying when she claimed that defendant sexually assaulted her. We disagree.

A defendant must move in the trial court for a new trial or a *Ginther*[2] hearing to preserve a claim of ineffective assistance of counsel. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Defendant did not move in the trial court for a new trial or a *Ginther* hearing. Thus, the issue is unpreserved. Whether defendant was deprived of his right to the effective assistance of counsel is a "mixed question" of constitutional law and fact. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). We review the trial court's findings of fact, if any, under the clear error standard and "the ultimate constitutional issue" de novo. *Id*. There is clear error if we are left with a "definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (quotation marks and citation omitted). Where an evidentiary hearing was not held, our review is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Criminal defendants have a right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 653-654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate:

> (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*People v Randolph*, ___ Mich ___, ___; NW2d ___ (2018) (Docket No. 153309); slip op at 6 (quotation marks and citation omitted).]

There is a strong presumption that trial counsel's performance was the result of sound trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The defendant bears the burden of "overcom[ing] the presumption that [trial counsel] was effective." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). Defendant must also establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). This Court "will not substitute [its] judgment for that of counsel on matters of trial strategy, nor will [it] use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

After a review of the record, we are not persuaded that trial counsel's performance fell below an objective standard of reasonableness. While the record reflects that trial counsel did not call any witnesses on defendant's behalf, there is no indication why trial counsel chose not to call Ovalle-Ruiz. Whether to call a particular witness to testify is presumed to be a matter of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Notably, nothing in the record overcomes the strong presumption that trial counsel decided not to call Ovalle-Ruiz as a witness because of sound trial strategy. *Payne*, 285 Mich App at 190. For example, given defendant's admissions to Pitris and Detective Tremonti that he sexually abused SR, trial counsel may have reasonably surmised that calling Ovalle-Ruiz to testify that SR was lying about the sexual abuse would not have been of benefit to defendant's defense at trial.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Under such circumstances, the record also does not yield any indication that trial counsel compromised his duty to undertake a reasonable investigation or to make a reasonable decision that would render an investigation of Ovalle-Ruiz's proposed testimony unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Additionally, even if we were to agree with defendant that trial counsel's performance fell below an objective standard of reasonableness, defendant must also establish that he was prejudiced by trial counsel's performance. *Randolph*, ___ Mich at ___; slip op at 6. Failing to call a witness will only amount to ineffective assistance of counsel if defendant was deprived of a substantial defense. *Dixon*, 263 Mich App at 398. A substantial defense is one that might have changed the trial outcome. *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999). After considering the record evidence, we conclude that even if trial counsel had called Ovalle-Ruiz as a witness to testify at trial, it is not reasonably probable that the outcome of defendant's trial would have been different. Specifically, defendant confessed to two different people, Pitris and Detective Tremonti, that he had intercourse with SR several times since she was 13 years old. Where defendant openly admitted to sexually assaulting SR on multiple occasions, in our view a reasonable probability does not exist that the jury would have found defendant not guilty, even if trial counsel had called Ovalle-Ruiz to testify.

Defendant next argues that Detective Tremonti impermissibly testified as to defendant's guilt. Defendant contends that the trial court erred by admitting Detective Tremonti's testimony, and that trial counsel's performance was ineffective because counsel failed to object to the testimony. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). As stated, a defendant must move in the trial court for a new trial or a *Ginther* hearing in order to preserve a claim of ineffective assistance of counsel. *Lopez*, 305 Mich App at 693. Defendant did not object to Detective Tremonti's testimony at trial, and did not move in the trial court for a new trial or a *Ginther* hearing. Thus, defendant's evidentiary challenge and his claim of ineffective assistance of counsel are both unpreserved.

With regard to defendant's evidentiary challenge, unpreserved issues are reviewed for plain error. The plain error test has four requirements:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights . . . [, and 4) ] once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Randolph*, ___ Mich at ___; slip op at 6-7, quoting *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).]

A witness may not " 'express an opinion on the defendant's guilt or innocence of the charged offense[.]' " *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013), quoting *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). However, lay witnesses may testify "about the opinions they form as a result of direct physical observation." *People v Hanna*, 223 Mich App 466, 475; 567 NW2d 12 (1997); see also MRE 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). Further, the police may "explain[ ] the steps of their investigations from their personal perceptions." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

Detective Tremonti's testimony was proper. At trial, Detective Tremonti was questioned regarding defendant's behavior during his police interview:

> *Q.* Initially, when you were asking [defendant] those questions [about SR's allegations], how did he respond?
>
> *A.* He denied the allegations at first. They were -- in my opinion, in my experience and training, they were not strong denials. He was kind of unsure and kind of reacted inappropriately, through my experience.

Significantly, Detective Tremonti did not express an opinion regarding defendant's guilt or innocence, but only testified regarding his physical observations concerning defendant's responses and his opinion about those observations. See *Hanna*, 223 Mich App at 475. Put another way, we disagree that Detective Tremonti stating that defendant's denials "were not strong[,]" and that defendant reacted inappropriately to police questioning is tantamount to opining that defendant is guilty of the alleged crimes.

Defendant also argues that Detective Tremonti's testimony was inadmissible because it was irrelevant and more prejudicial than probative. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. We disagree with defendant's contention where Detective Tremonti's testimony indeed met the requirements of MRE 401, as defendant's responses during police questioning were relevant not only to why further police questioning was warranted, but were also probative of defendant's culpability of the charged offenses.

Concerning defendant's claim that the testimony was more prejudicial than probative, MRE 403 provides, in pertinent part that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Evidence is unfairly prejudicial when "there exists a danger that *marginally* probative evidence will be given undue or preemptive weight by the jury." *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010) (quotation marks and citation omitted). While we recognize that Detective Tremonti's testimony was prejudicial to defendant, its probative value was not "substantially outweighed by the danger of unfair prejudice[.]" MRE 403. Because he did not opine on defendant's guilt, there was no danger that the jury would give Detective Tremonti's testimony undue weight. See

*Feezel*, 486 Mich at 198. In sum, Detective Tremonti's testimony was proper, and the trial court did not err by admitting it.

We also disagree with defendant's claim that trial counsel's conduct in not objecting to this testimony fell below an objective standard of reasonableness. Because Detective Tremonti's testimony was proper, trial counsel was not obligated to object to its admission. Trial counsel is not required to advance a futile objection. *People v Milstead*, 250 Mich App 391, 401; 648 NW2d 648 (2002). Additionally, even if we were to agree with defendant that trial counsel's performance was objectively unreasonable, defendant cannot show that he was prejudiced by trial counsel's failure to object to Detective Tremonti's testimony, particularly where defendant confessed to Pitris and Detective Tremonti that he committed the charged crimes.

## III. CONCLUSION

Defendant's claims alleging ineffective assistance of counsel and the improper admission of evidence are without merit.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Jane M. Beckering