*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUSTIN ROBERT MOSHER,

        Defendant-Appellant.

UNPUBLISHED
May 21, 2019

No. 342214
Washtenaw Circuit Court
LC No. 16-000214-FH

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felonious assault, MCL 750.82; possession of a firearm by a person convicted of a felony (felon-in-possession), MLC 750.224f; carrying a concealed weapon, MCL 750.227; and possession of a firearm during the commission of a felony (felony-firearm) (two counts), MCL 750.227b. For the reasons set forth in this opinion, we affirm defendant's convictions but remand for resentencing.

## I. BACKGROUND

On February 14, 2016, defendant and the victim encountered each other while driving in Ann Arbor, Michigan. The victim testified that he approached an intersection after which the left lane where he was driving merged into the lane to his right. When the victim realized that he needed to merge, he noticed that there was a black sedan to the right of his vehicle. The driver of the black sedan, who was later identified as defendant, was "veering back and forth" and "beeping the horn." The victim attempted to yield to defendant's vehicle as defendant simultaneously attempted to yield to him. Both the victim and defendant attempted to yield a second time after which defendant continued to brake and merged behind the victim. The victim testified that defendant followed closely behind the victim's vehicle, continued to swerve back and forth, and beeped the horn intermittently.

At the next intersection, the victim stopped at a red light. Defendant's vehicle was stopped directly behind the victim's vehicle. The victim testified that after the light turned green, defendant accelerated and passed alongside him until the back of defendant's vehicle was near the front wheel of the victim's vehicle. According to the victim, defendant lowered his

driver's side window, put his head and right hand out the window, and waved a pistol with his right hand while his left hand was on the steering wheel. Defendant pointed the gun at the victim and then accelerated down the street at a high rate of speed. The victim testified that the experience was "absolutely terrifying." The victim wrote down defendant's license plate number and contacted the police. The responding police officers conducted a felony traffic stop after locating defendant driving in his vehicle later that day. The police officers did not find any weapons on defendant's person or in defendant's vehicle.

The jury convicted defendant as previously noted. This appeal ensued.

## II. JUROR BIAS

On appeal, defendant first argues that he was denied his right to a fair and impartial jury because of the alleged bias harbored by a juror whose daughter had been the victim of an incident that was factually similar to the charged offenses in the instant case.

During defendant's trial, approximately one hour after the jury began its deliberations, a juror submitted a note to the court in which the juror raised a potential bias issue involving another juror. The note stated as follows:

> How do we share that a potential bias came up with a juror? Juror shared daughter had a gun pulled on her in a road rage incident on a highway and gun was pointed out window at her about a year ago.

The record indicates that the trial court held a discussion about this note in chambers, but there is no record of what was said during this discussion. The record is also silent regarding any response that the jury received from the trial court with respect to this note. However, it is apparent that the jury proceeded with its deliberations. Approximately three hours after this note was submitted, the jury sent a note indicating that a verdict had been reached. Before the jury was called into the courtroom to announce its verdict, defense counsel moved on the record for a mistrial on the ground that defendant was denied his right to a fair and impartial jury. Defense counsel argued that because the juror in question failed to disclose this particular incident during voir dire in response to defense counsel's questions about whether any jurors or their relatives or close friends had been involved in any road rage incidents, defense counsel had been unable to conduct further relevant voir dire to determine whether to challenge the juror for cause or use a peremptory challenge. The trial court denied the motion for a mistrial, subject to the possibility of revisiting this ruling once the attorneys had an opportunity to voir dire the jurors after the verdict was given. The trial court then called the jury in to render its verdict.

After accepting the jury's guilty verdict and excusing the jury from the courtroom, the trial court brought the juror who had written the note, Juror 6, back into the courtroom for individual questioning on the record. Juror 6 identified Juror 7 as the juror with the potential bias issue, and Juror 6 further indicated that her verdict determination was not influenced by Juror 7's statement regarding her daughter's experience of road rage. Juror 7 was brought into the courtroom to be questioned on the record after Juror 6 had been excused. In response to the trial court's questioning, Juror 7 stated that she did not have any bias based on the incident involving her daughter. Juror 7 further stated that she remembered the incident at some point

during deliberations, that she shared it with the jury, and that it was "blown off" by the other jury members. The incident did not come up again during deliberations. Juror 7 stated with respect to the incident involving her daughter that it did not "sway me one way or the other," that her verdict was based "strictly on what was presented" to the jury, and that her verdict was not the product of any bias. Juror 7 also affirmatively indicated that she was fair and impartial in her verdict. Finally, the entire jury was brought back into the courtroom, and the trial court asked all of the jury members whether any of their respective decisions were affected in any way by Juror 7's description of her daughter's experience or any discussion that resulted from that statement. No jurors indicated that there had been any such influence. Additionally, the trial court asked the jury members whether any of them had any doubt regarding the fairness and impartiality of their verdict. No jurors responded affirmatively to this question.

Both the United States Constitution and the Michigan Constitution protect a criminal defendant's right to be tried by an impartial jury. *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008); US Const, Am VI; Const. 1963, art 1, § 20. Appellate review of the question whether a defendant was denied the constitutional right to an impartial jury is de novo. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). This Court reviews for an abuse of discretion a trial court's ruling on a motion for a mistrial. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "An abuse of discretion occurs only when the trial court chooses an outcome falling outside [the] principled range of outcomes." *Miller*, 482 Mich at 544 (quotation marks and citation omitted; alteration in original). "A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Schaw*, 288 Mich App at 236 (quotation marks and citation omitted). We review a trial court's factual findings for clear error, which exists only "if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Miller*, 482 Mich at 544 (quotation marks and citation omitted).

Our Supreme Court has held that a defendant seeking to invalidate a jury verdict on the ground that his right to an impartial jury was violated must demonstrate that the alleged juror misconduct or bias resulted in prejudice—i.e., that the juror's impartiality was compromised. *Miller*, 482 Mich at 548-552. "A juror's failure to disclose information that the juror should have disclosed is only prejudicial if it denied the defendant an impartial jury," and a new trial is warranted only if the juror's failure to disclose actually denied the defendant the protection of this right. *Id*. at 548-549. The juror misconduct must be of a type that would "reasonably indicate" that there was not a fair and impartial trial. *Id*. at 551 (quotation marks and citation omitted). "A new trial will not be granted for misconduct of the jury if no substantial harm was done thereby to the party seeking a new trial . . . " *Id*. (quotation marks and citation omitted; ellipsis in original). "[J]urors are presumed to be . . . impartial, until the contrary is shown," and the "burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id*. at 550 (quotation marks and citation omitted; ellipsis in original). Where there is no evidence that the juror alleged to have been impartial was actually not impartial or that the juror improperly influenced other jurors, it is not clear error for a trial court to find that the defendant was not prejudiced by the juror's presence on the jury. *Id*. at 552-555.

In this case, there is no record evidence that the jury verdict was the product of any juror impartiality. The record indicates that Juror 7 disclosed during jury deliberations an incident that

she had not previously remembered in which her daughter had been the victim of an instance of road rage with factual similarities to the instant case. The trial court questioned the juror regarding the disclosure, and the juror stated that the incident did not come up again during the jury deliberations, that her daughter's experience did not have any bearing on her decision in this case, and that she was fair and impartial in the verdict. Both the prosecutor and defense counsel questioned the juror regarding the event and her impartiality.

The trial court then asked the entire jury whether there was anything about Juror 7's personal disclosure during deliberations, or any resulting discussion, that affected the verdict in any way. The trial court also asked the jury whether it rendered a fair and impartial verdict on the basis of the evidence that was presented in this case. No juror gave any indication that the disclosure had any effect on the verdict or that the verdict was not fair or impartial. Defense counsel and the prosecutor had the opportunity to further question the jury panel, but they declined to do so. In the absence of any evidence that any member of the jury was not impartial, defendant has failed to establish the prejudice required to demonstrate that he was denied a fair and impartial trial. *Id*. at 548-555. Accordingly, it was not an abuse of discretion for the trial court to refrain from revisiting its decision to deny defendant's motion for a mistrial.

Next, defendant further argues that he was deprived of his right to effective assistance of counsel based on defense counsel's "failure to immediately request permission to conduct necessary follow-up out of the presence of the rest of the jury, which would have likely led to a successful cause challenge."

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact." *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). "We review factual findings for clear error, but we review de novo questions of constitutional law." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Because no *Ginther*[1] hearing was conducted in this matter,[2] "our review of the relevant facts is limited to mistakes apparent on the record." *Riley*, 468 Mich at 139.

For a defendant to successfully establish an ineffective assistance of counsel claim, a defendant must show (1) that defense counsel's performance did not meet an objective standard of reasonableness under prevailing professional norms and (2) that defendant was prejudiced, meaning that there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's deficient performance. *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); see also *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] This Court previously denied defendant's motion to remand because defendant "fail[ed] to persuade the Court of the necessity of a remand at this time." *People v Mosher*, unpublished order of the Court of Appeals, entered October 1, 2018 (Docket No. 342214).

In this case, defendant has not shown the requisite prejudice and therefore has not demonstrated that he was denied the effective assistance of counsel. As previously discussed, the questioning of the jurors on the record did not reveal evidence of any bias or partiality on the part of any of the jurors. Even if defense counsel had made a request to examine the jurors immediately after the note indicating a potential bias issue was received, such a course of action thus would still not have led to discovering that any juror was susceptible to removal on the basis of improper bias. In other words, there is no evidence indicating a reasonable probability that the result of the trial would have been different had such an earlier request been made by defense counsel. Because defendant has not demonstrated that he was prejudiced by defense counsel's actions, he cannot establish his ineffective assistance of counsel claim. *Strickland*, 466 US at 700.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next challenges the sufficiency of the evidence supporting his convictions. Specifically, defendant argues that there was insufficient evidence that a gun was actually involved in the incident and that defendant therefore was improperly convicted of felonious assault and the other firearm offenses that flowed from that charge.[3]

This Court reviews de novo a sufficiency of the evidence question in a criminal case. *People v Murphy*, 321 Mich App 355, 358; 910 NW2d 374 (2017). We must consider the evidence "in a light most favorable to the prosecution to determine whether a rational trier of fact could have concluded that the elements of the offense were proven beyond a reasonable doubt." *Unger*, 278 Mich App at 222. "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *Id*. This is because "[j]uries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Felonious assault is a felony in which a person "assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder." MCL 750.82(1). The prosecution must prove beyond a reasonable doubt that there was "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *Avant*, 235 Mich App at 505. Defendant's additional convictions for felon-in-possession, carrying a concealed weapon, and felony-firearm also required proof that he possessed or carried a firearm as an element to support these convictions.

---

[3] Defendant's appellate argument is directed solely at whether there was sufficient evidence that he possessed a firearm. Defendant has not made any argument specifically directed at any other element of the crimes of which he was convicted. He has therefore abandoned any such challenges. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

See MCL 750.224f(1) [4] (felon-in-possession); MCL 750.227(2) [5] (carrying a concealed weapon); MCL 750.227b(1) (felony-firearm).

In this case, the record reflects that there was sufficient evidence introduced at trial to support the conclusion that defendant possessed a gun. The victim testified that defendant put his head and right hand out the window, waved "a pistol" around that he held with his right hand, and then pointed the gun at the victim. The victim described the gun with specificity as a small, semiautomatic, "subcompact style gun" with a "large barrel hold" and a black matte finish. A police officer that responded to the victim's 911 call testified that the victim reported that defendant pointed a gun at him. Based on the trial testimony, a rational trier of fact could have concluded beyond a reasonable doubt that defendant possessed a gun.

Although defendant argues that the victim could have mistaken black gloves for a gun and notes that no gun was ever recovered from defendant in this case, the prosecutor is only required to "convince the jury in the face of whatever contradictory evidence the defendant may provide" and is under no obligation to "negate every reasonable theory consistent with innocence." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). Furthermore, the testimony at trial reflected that defendant was not apprehended until several hours after the assault occurred, which would have allowed him plenty of time to dispose of the weapon. Defendant additionally argues that the victim was not credible because he gave inconsistent descriptions of the event. At trial, defense counsel cross-examined the victim and the responding police officer regarding inconsistencies between the victim's trial testimony, his preliminary examination testimony, and his report to the police officers. It is strictly the jury's task to determine the credibility of witnesses and the weight to be given to the evidence. *Unger*, 278 Mich App at 222.

On the record evidence presented in this case, we conclude that there was sufficient evidence to support the conclusion that defendant possessed and used a gun during the incident that led to his convictions.

## IV. SPEEDY TRIAL

Next, defendant argues that he was deprived of his right to a speedy trial because his trial occurred approximately nine months after the date of his arrest.

---

[4] In this case, the parties stipulated that defendant was previously convicted of a non-specified felony. Therefore, MCL 750.224f(1) was applicable.

[5] Although this statutory provision specifically refers to a "pistol," the applicable definition of that term is contained in MCL 750.222(f) and defines "pistol" to mean "a loaded or unloaded firearm that is 26 inches or less in length, or a loaded or unloaded firearm that by its construction and appearance conceals itself as a firearm." Moreover, the victim described the gun at one point during his testimony as a "pistol."

A defendant's right to a speedy trial is protected by both the United States Constitution and Michigan Constitution, *People v Williams*, 475 Mich 245, 260; 716 NW2d 208 (2006); US Const, Am VI; Const. 1963, art 1, § 20, as well as by statute and court rule, MCL 768.1; MCR 6.004(A). We review de novo, as an issue of constitutional law, the question whether a defendant was denied the right to a speedy trial. *Williams*, 475 Mich at 250. The trial court's factual findings are reviewed for clear error. *Id*. Under the standards adopted by both the United States Supreme Court and the Michigan Supreme Court, there is no longer a strict requirement that a defendant must formally demand a speedy trial but a defendant's failure to do so is an important factor in evaluating whether the defendant was denied the right to a speedy trial. *Barker v Wingo*, 407 US 514, 523-529, 531-532; 92 S Ct 2182; 33 L Ed 2d 101 (1972);[6] *People v Collins*, 388 Mich 680, 692-693; 202 NW2d 769 (1972).

In *Barker*, the United States Supreme Court set forth a four-factor balancing test for determining whether a defendant's right to a speedy trial was violated. *Barker*, 407 US at 530. The factors to consider are (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant. *Id*. The Michigan Supreme Court has also expressly adopted the *Barker* factors as the applicable test in Michigan. *Collins*, 388 Mich at 688; *Williams*, 475 Mich at 261. The speedy trial protections are triggered once an individual becomes an "accused" in a criminal prosecution by way of being formally charged or arrested and held to answer a criminal charge. *United States v Marion*, 404 US 307, 313, 320-321; 92 S Ct 455; 30 L Ed 2d 468 (1971); see also *Williams*, 475 Mich at 261 ("The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest."). As the *Barker* Court explained, each case requires a careful balancing of these factors and no factor is dispositive:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution. [*Barker*, 407 US at 533.]

---

[6] The *Barker* Court specifically stated at one point during its explanation of this concept as follows:

> We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. [*Barker*, 407 US at 528.]

We begin our analysis in the instant case by considering the length of the delay, which "is to some extent a triggering mechanism." *Id*. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. However, the length of time that constitutes such a presumptively prejudicial delay depends on the circumstances of the individual case because the right to a speedy trial is a somewhat imprecisely defined one that is evaluated on an "ad hoc basis" and in which considerably less delay is acceptable for "an ordinary street crime" than for a "serious, complex conspiracy charge." *Id*. at 530-531. In Michigan, a delay under 18 months places the burden on the defendant to demonstrate that he or she was prejudiced, but a delay of more than 18 months is presumptively prejudicial and requires the prosecution to assume the burden of rebutting that presumption. *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009).

In this case, defendant was arrested at some point during the late evening hours of February 14, 2016, or early morning hours of February 15, 2016. Defendant's trial was initially scheduled for August 15, 2016. On August 15, 2016, defendant's trial was adjourned and rescheduled for October 3, 2016, to accommodate another criminal case that took priority over defendant's trial, the trial court's docket, and other scheduling conflicts. Defendant's trial commenced on November 7, 2016, and concluded on November 8, 2016. It is unclear from the record why the trial was adjourned from October 3 to November 7. Accordingly, the period between defendant's arrest and his trial was approximately nine months. Because this delay was less than 18 months, the general presumption of prejudice does not apply. *Id*. Nevertheless, the instant case was a fairly simple one with relatively uncomplicated facts, and a nine-month delay seems unnecessarily long on its face under the circumstances. See, e.g., *Barker*, 407 US at 531 n 31.

Turning to the second factor, the lower court record indicates that the August 15 adjournment was attributable to scheduling conflicts and docket congestion. Both parties were prepared for trial at the August 15 proceeding. Although the prosecutor advocated for trying to proceed with defendant's trial more promptly, it became impractical to do so in light of various scheduling concerns. In deciding to postpone defendant's trial, the trial court considered the court's schedule, the parties' schedules, and any potential inconvenience to jurors. "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (quotation marks and citation omitted). Scheduling delays are also attributed to the prosecution. *Waclawski*, 286 Mich App at 666. Additionally, as previously noted, the reason for the additional delay from October 3 to November 7, 2016, is not apparent from the record. "Unexplained delays are charged against the prosecution." *Id*. (quotation marks and citation omitted).

With respect to the third factor, defendant asserted his right to a speedy trial through defense counsel's oral objection to the trial delay, which was placed on the record at the August 15, 2016 trial adjournment hearing. The trial court responded to the objection by instructing defense counsel that he could file a written motion. Defense counsel did not pursue this matter further. Defendant's failure to more zealously pursue a speedy trial motion seems indicative of the lack of prejudice that the delay actually caused him. See *Barker*, 407 US at 531-532 ("Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some

extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.").

Indeed, moving to the fourth factor, it is the lack of prejudice that the delay caused for defendant that is most significant in the overall balance of the factors in this case. The *Barker* Court, in providing guidance for evaluating the prejudice factor, identified three defendant interests that the right to a speedy trial was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. at 532. The last of these concerns is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. Because the delay in the instant case was less than 18 months, it is defendant's burden to show that he was prejudiced by the delay. *Waclawski*, 286 Mich App at 665.

In this case, defendant has not pointed to any specific way in which he was prejudiced, and he has not made any argument on appeal claiming that he was prejudiced other than merely contending in circular fashion that he was prejudiced because his trial did not occur sooner. We acknowledge that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett v United States*, 505 US 647, 655; 112 S Ct 2686; 120 L Ed 2d 520 (1992). But there is also an inverse relationship between the requirement for a demonstration of prejudice and the combination of (1) the length of the delay and (2) the egregiousness of the state's conduct in causing the delay. See *id*. at 655-657. While the delay in the instant case was perhaps excessive for such a simple case, it was not *extraordinarily* so and the primary reasons for the delay involved scheduling matters rather than negligence or bad faith on the part of the prosecution.[7] Under such circumstances, defendant must show some particularized form of prejudice to establish a violation of his right to a speedy trial; this is not a case where he can merely rest his claim on the length of the delay.[8] In light of the total absence in the record of any indication that defendant's trial defense was impaired or that he suffered *any* kind of prejudice during the relatively minor nine-month delay, coupled with the fact that defendant fails to make

---

[7] There is no evidence in the record of negligence or bad faith on the part of the prosecution in bringing this matter to trial.

[8] In other words, the instant case is clearly distinguishable from *Doggett*. In *Doggett*, the United States Supreme Court held that the petitioner's right to a speedy trial was violated, despite the petitioner's failure to affirmatively demonstrate that he was prejudiced by the delay, where the petitioner was arrested 8½ years after he was indicted because the Government agents had completely neglected to look for him. *Doggett*, 505 US at 649-650, 655, 657-658. The Court called this "the Government's egregious persistence in failing to prosecute [the petitioner]" and noted that the petitioner "would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights." *Id*. at 657.

any specific claim of prejudice on appeal, defendant has not met his burden to show prejudice. *Waclawski*, 286 Mich App at 665.

We therefore conclude that defendant's right to a speedy trial was not violated.

Defendant additionally argues that defense counsel was constitutionally ineffective for failing to file a formal, written motion on speedy trial grounds. "Whenever the defendant's constitutional right to a speedy trial is violated, the defendant is entitled to dismissal of the charge with prejudice." MCR 6.004(A). However, for the reasons stated above, defendant has failed to demonstrate that such a motion would have been successful in obtaining a dismissal. Accordingly, defendant has not established the requisite prejudice because he has not shown that but for defense counsel's performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 US at 694. Defendant has thus not established that he was denied the effective assistance of counsel on this ground. *Id*. at 700.

## V. OV 4

Finally, defendant argues that the trial court erroneously assessed 10 points for Offense Variable (OV) 4 because the victim did not suffer serious psychological injury requiring professional treatment.

Defendant preserved this issue for appeal through his objection at the sentencing hearing to the scoring of OV 4 at 10 points. MCL 769.34(10). We review de novo as questions of law the interpretation and application of the legislative sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citation omitted). If a sentence is within the appropriate guidelines sentence range, a defendant is still entitled to resentencing if there is a scoring error altering the guidelines range or if the trial court relied on inaccurate information. *People v Francisco*, 474 Mich 82, 88-90, 92; 711 NW2d 44 (2006).

The trial court is to assess 10 points for OV 4 (psychological injury to the victim) where the victim suffered "[s]erious psychological injury requiring professional treatment." MCL 777.34(1)(a). Ten points are to be assessed "if the serious psychological injury may require professional treatment," and the fact that a victim has not sought treatment is not conclusive on this question. MCL 777.34(2). The trial court is to assess zero points for OV 4 if the victim did not suffer a serious psychological injury requiring professional treatment. MCL 777.34(1)(c).[9] In determining the proper score for OV 4, "a court cannot merely assume that a victim has

---

[9] At the time of defendant's sentencing, this provision was contained in 777.34(1)(b). The amendment to MCL 777.34(1), which became effective on March 28, 2019, has no further bearing on the instant case. See 2018 PA 652.

suffered a 'serious psychological injury' solely because of the characteristics of the crime." *People v White*, 501 Mich 160, 165; 905 NW2d 228 (2017). A "victim's fear during a crime, *by itself and without any other showing of psychological harm*," is insufficient to justify assessing 10 points for OV 4. *Id*. at 164.

At the sentencing hearing in this case, the prosecutor requested that the score for OV 4 be increased from zero points to 10 points. The prosecutor argued that the victim's trial testimony showed that he suffered an enduring psychological injury. Defense counsel objected, arguing that there was no evidence of psychological injury requiring professional treatment. The trial court granted the prosecutor's request, stating as follows:

> Well leaving aside how different people certainly react, I think the idea that someone's got a gun pointed at them in a potential road, road rage kind of circumstance particularly when they, they testify that he was not only concerned but he was scared at the time, leaves [sic] the Court to a conclusion that it's clearly someone that may seek that kind of therapy and/or treatment. I'll score it as ten points.

This ruling resulted in an increase of defendant's recommended minimum sentencing guidelines range from 12 to 24 months to 14 to 29 months.

Although the victim's testimony established that he was afraid during the incident, there is no further evidence in the record of psychological harm. The trial court relied solely on the victim's testimony that he felt fearful as the crime was unfolding and the assumption that an event such as the one that occurred in this case would typically cause psychological harm requiring professional treatment. This is an insufficient basis on which to predicate a score of 10 points for OV 4. *White*, 501 Mich at 164, 165. "[A] trial court may not simply assume that someone in the victim's position would have suffered psychological harm because MCL 777.34 requires that serious psychological injury '*occurred* to a victim,' not that a *reasonable* person in that situation would have suffered a 'serious psychological injury.' " *Id*. at 163 (citation and some quotation marks omitted). The trial court erred by assessing 10 points for OV 4 in this case.

Defendant's recommended minimum guidelines range was calculated based on his felon-in-possession conviction, which is a Class E felony and the offense with highest crime class among his convictions for which he received concurrent sentences (felon-in-possession, carrying a concealed weapon, and felonious assault).[10] MCL 777.16m; MCL 750.224f; see also *People v*

---

[10] Carrying a concealed weapon is also a Class E felony. MCL 777.16m; MCL 750.227. Felonious assault is a Class F felony. MCL 777.16d; MCL 750.82. Felony-firearm carries a mandatory 2-year sentence for a first offense, which is to be served consecutively with and preceding the sentence for the underlying felony. MCL 750.227b(1) and (3). Defendant's 2-year felony-firearm sentences were concurrent with each other and concurrent with his sentence for carrying a concealed weapon. His felony-firearm sentences were consecutive to and preceding his sentences for the felonious assault and felon-in-possession convictions. Carrying a

*Lopez*, 305 Mich App 686, 690; 854 NW2d 205 (2014) ("The trial court [is] not required to independently score the guidelines for and sentence the defendant on each of his concurrent convictions if the court properly score[s] and sentence[s] the defendant on the conviction with the highest crime classification."). Defendant's sentence was based on a minimum guidelines range of 14 to 29 months, which was calculated based on a total prior record variable (PRV) score of 100 and a total OV score of 25. MCL 777.66. However, assessing zero points for OV 4 results in a total OV score of 15, which results in changing defendant's OV level from III to II on the Class E sentencing grid. *Id*. This change results in lowering defendant's guidelines range to 12-24 months. *Id*. Although defendant's 2-year concurrent minimum sentences for his felonious assault, felon-in-possession, and carrying-a-concealed-weapon convictions are still within this corrected guidelines range, resentencing is nonetheless required because this scoring error alters the minimum sentencing guidelines range. See *Francisco*, 474 Mich at 92.

We affirm defendant's convictions but remand for resentencing in accordance with this opinion.

Remanded for resentencing. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

concealed weapon cannot serve as a predicate felony for a felony-firearm conviction. MCL 750.227b(1).