*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EDWIN EUGENE ZEHFUSS,

Defendant-Appellant.

UNPUBLISHED
March 12, 2020

No. 346777
Wayne Circuit Court
LC No. 18-006434-01-FH

Before: STEPHENS, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of operating while intoxicated (OWI) MCL 257.625(1), third-offense MCL 257.625(9)(c). Defendant was sentenced to two years' probation. We affirm.

## I. FACTS

On June 25, 2018, at approximately 9:26 p.m., city of Canton Police Officer Matthew Delong (Delong) responded to a 911 call made by Robert Taipalus stating that defendant was passed out on the sidewalk at a rest stop located at I-275 and Palmer Road in Canton, Michigan. Delong's body camera recorded defendant's statements and the events that transpired upon DeLong's arrival. Delong observed defendant standing outside near the driver's side of defendant's vehicle. The vehicle was not running and the keys were in the center console. Defendant's speech was slurred, he reeked of alcohol, and his eyes were bloodshot. Defendant told Delong that he drove to the I-275 rest stop and thought that he had been there since 7:30 p.m. There was no indication that someone else drove defendant to the rest stop. Defendant failed numerous field sobriety tests, and refused to take the DataMaster breathalyzer test.

Defendant gave multiple conflicting statements as to where he consumed alcohol. Defendant told Delong that 1) he was drinking at the rest stop, 2) that he was drinking at a Hungry Howie's parking lot, 3) that he was drinking at a barbeque place, and 4) that he had seven shots of vodka at Buffalo Wild Wings. At trial, Delong agreed that, based on defendant's statements, he did not know where defendant had been drinking. At one point, defendant told Delong that he had his last drink at 6:30 p.m. "prior to leaving the bar." When Delong asked defendant, why he drove

to the rest stop, defendant responded, "I wanted to be smart. I did not want to be on the road." and that he did not want "to kill anyone." Delong searched defendant's vehicle for liquor, but found none. Delong arrested defendant, and obtained a search warrant to draw defendant's blood. At 12:50 a.m., defendant's blood contained .283 grams of alcohol per 100 milliliters of blood.

At trial, Taipalus and defendant's mother, Linda Zehfuss, testified on defendant's behalf. Taipalus testified that he was working out of his vehicle and had been staying at the I-275 rest stop since May 2018. He testified that defendant was at the rest stop so often, approximately three to four times a week, that he thought defendant was living there too. On the day defendant was arrested, Taipalus arrived at the rest stop at 5:30 p.m. Taipalus testified that defendant was already there. He testified that defendant appeared normal. While sitting at a picnic table with the defendant, Taipalus observed defendant to be drinking from a red cup and that defendant went back and forth to defendant's vehicle to refill the cup. Taipalus denied knowing what was in the cup. Taipalus testified that he left the rest stop at approximately 8:15 p.m., and when he returned it was dark out, the police and ambulance were there, and he did not see the defendant. Mrs. Zehfuss agreed that her son had an alcohol problem and testified that defendant had been sleeping at the rest stop. She testified that she went to the impound to retrieve defendant's vehicle after his arrest and that while there, she searched defendant's vehicle because she figured that if defendant were arrested for "a DUI", there had to be "something in the car." She testified that her search of the vehicle was lengthy because defendant "had so much stuff in the back of his car". She stated that she found a "VO bottle" underneath a sweatshirt tucked under the backseat that was three-fourths full. Mrs. Zehfuss testified that this was not the first time she had found whiskey bottles in defendant's vehicle. She brought defendant's vehicle back to her home and cleaned it out. After it was clean, she placed the VO bottle back underneath the sweatshirt, tucked it back under the backseat, and took a photograph of it. That photograph was introduced into evidence.

Defendant was found guilty of OWI. The court found that defendant's statements to Delong established that defendant believed he was under the influence while driving and arrived at the rest stop intoxicated. The court considered Taipalus's and Mrs. Zehfuss's conflicting testimony concerning whether defendant further consumed liquor while at the rest stop. The court found Taipalus's testimony regarding defendant's behavior and demeanor on the night of incident and having never seen defendant consume alcohol at the rest stop incredible.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant contends that the prosecution failed to present sufficient evidence to sustain defendant's conviction. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo a challenge to the sufficiency of the evidence in a bench trial. *People v Lanzo Constr Co*, 272 Mich App 470, 473-474; 726 NW2d 746 (2006). "[W]hen reviewing sufficiency of the evidence claims, courts should view all the evidence--whether direct or circumstantial--in a light most favorable to the prosecution to determine whether the prosecution sustained its burden." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. We "will not interfere

with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). "All conflicts in the evidence must be resolved in favor of the prosecution." *Kanaan*, 278 Mich App at 618–619.

Defendant implies that his conviction was also contrary to the great weight of the evidence. "A trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008) (citation omitted). A "[d]efendant preserve[s] his argument that the verdict was against the great weight of the evidence by moving for a new trial on this ground." *Id*. Unpreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014) (citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763–764 (citation and quotation marks omitted). Defendant did not move for a new trial, thus, defendant's great weight of the evidence issue is unpreserved. Because defendant's issue is unpreserved, this Court's review is for plain error affecting defendant's substantial rights. *Id*. "Generally, to preserve an issue for appellate review, it must be raised, addressed, and decided by the trial court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).

"Whether a defendant's conduct falls within the scope of a penal statute is a question of statutory interpretation that is reviewed de novo." *People v Rea*, 500 Mich 422, 427; 902 NW2d 362 (2017) (citation omitted). "Because courts are wary of creating crimes, penal statutes are to be strictly construed and any ambiguity is to be resolved in favor of lenity[.]" *People v Gilbert*, 414 Mich 191, 211; 324 NW2d 834 (1982). Defendant failed to raise the issue of lenity in the trial court, therefore, this portion of defendant's issue is also unpreserved and is reviewed for plain error affecting defendant's substantial rights. *Lopez*, 305 Mich App at 695 (citation omitted).

B. ANALYSIS

"The Michigan Vehicle Code, MCL 257.1 *et seq*., prohibits a person from operating a motor vehicle while intoxicated." *Rea*, 500 Mich at 428. Defendant was convicted of OWI, third-offense, under MCL 257.625, which states, in part:

> (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means any of the following:

(a) The person is under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance.

(b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine or, beginning October 1, 2021, the person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

"OWI is a hybrid version of two offenses: MCL 257.625(1)(a) prohibits operating a motor vehicle under the influence of intoxicating liquor (OUIL) and MCL 257.625(1)(b) prohibits operating with an unlawful bodily alcohol content (UBAL)." *People v Hyde*, 285 Mich App 428, 447-448; 775 NW2d 833 (2009). "Therefore, under MCL 257.625(1), OWI requires proof of three elements: (1) the defendant operated a motor vehicle (2) on a highway or other place open to the general public or generally accessible to motor vehicles (3) while under the influence of liquor or a controlled substance, or a combination of the two, or with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood. Notably, the third element is disjunctive; that is, it can be satisfied in *either* of the two ways." *Id*. at 448.

Defendant argues that he became intoxicated at the rest stop and asserts that if his statements to Delong are excluded, there was insufficient evidence to support the trial court's finding that defendant was operating a vehicle while intoxicated. We disagree.

Defendant first told Delong that he consumed vodka at the rest stop. However, after a search for evidence of vodka in defendant's vehicle turned up nothing, defendant told Delong he drank seven shots of vodka at a local restaurant, consumed too many shots too quickly, and then drove his vehicle to the I-275 rest stop because he wanted to be smart, get off the road and not kill anyone. A logical inference from defendant's statements was that defendant understood that he had consumed a large amount of alcohol before driving his vehicle to the rest stop and that he was conscious of his inebriated state and continued to drive. However, unlike cases cited by the defendant where the only evidence of operation while intoxicated was a statement from a defendant, here, there was additional evidence to support the trial court's finding that defendant operated his vehicle while intoxicated. It is uncontroverted that defendant was visibly intoxicated when found at the rest stop. His speech was slurred, his eyes were bloodshot, and he reeked of alcohol. He also failed numerous field sobriety tests and refused to undergo the DataMaster breathalyzer test. A blood test later confirmed that defendant's UBAL was above the legal limit of .08, specifically, that defendant's blood contained .283 grams of alcohol per 100 milliliters of blood. Defendant's alternative versions of having become intoxicated at the rest stop were in conflict with the officer finding no alcohol on site. We acknowledge that defendant's mother provided testimony that she later found a vodka bottle that was three-fourths full in the rear of the vehicle under clothing. We also note that Taipalus offered evidence supporting the alternative theory that defendant became intoxicated at the rest stop. No expert witness testimony was offered in this case. The court made a credibility finding. We defer to the court's special ability to make credibility determinations in the first instance. *Kanaan*, 278 Mich App at 619. Since the ultimate verdict was supported by more than a statement by the admittedly intoxicated defendant, we will not disturb the verdict. This evidence was sufficient for the trial court to properly find that the

prosecution proved that defendant was driving under the influence of intoxicating liquor, in violation of MCL 257.625(1)(a).

Defendant also argues that the rule of lenity militates in favor of finding that MCL 257.625(1) does not include the conduct charged. We find this contention meritless.

"The rule of lenity provides that criminal statutes cannot be extended to cases not included within the clear and obvious import of their language and that if there is doubt as to whether the act charged is embraced in the prohibition, that doubt is to be resolved in favor of the defendant." *Rea*, 500 Mich at 451 n 10 (McCormack, J., dissenting); (citations and quotation marks omitted). A "statute is sufficiently definite if its meaning can be fairly ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of the words." *People v Lueth*, 253 Mich App 670, 676; 660 NW2d 322 (2002).

A plain reading of the Motor Vehicle statute prohibits individuals from driving while intoxicated on a highway. MCL 257.625(1) ("A person . . . shall not operate a vehicle upon a highway or other place open to the general public . . . including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated."). The statute is not ambiguous as applied here. Defendant stated that he consumed a large amount of alcohol and then drove himself to the rest stop. He was visibly intoxicated and had an UBAL over twice the legal limit. Because defendant's conduct fell within the statutory language of MCL 257.625(1), the rule of lenity is inapplicable to his case. *People v Wakeford*, 418 Mich 95, 113-114; 341 NW2d 68 (1983) ("The rule of levity properly applies only in the circumstances of an ambiguity, or in the absence of any firm indication of legislative intent.").

We further reject defendant's contention that the verdict was against the great weight of the evidence where other than defendant's mention within the standard of review section of his appellate brief, defendant failed to support his argument with legal analysis. *People v Johnson*, 315 Mich App 163, 199; 889 NW2d 513 (2016). Consequently, defendant fails to show that the evidence preponderates so heavily against the trial court's verdict "that it would be a miscarriage of justice to allow the verdict to stand." *Unger*, 278 Mich App at 232 (citation omitted). As already indicated, the evidence presented was sufficient to support defendant's OWI conviction.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto