*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOSEPH J. THOMAS,

      Defendant-Appellant.

UNPUBLISHED
November 12, 2020

No. 348572
Macomb Circuit Court
LC No. 2018-002711-FC

Before: BOONSTRA, P.J., and CAVANAGH and BORRELLO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of armed robbery, MCL 750.529, felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 9 to 30 years for the armed robbery conviction and 4 to 7½ years for both the felon-in-possession and CCW convictions, to be served consecutively to the statutory two-year prison term for felony-firearm. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

At around midnight on July 11, 2018, Derek Bennett was robbed at gunpoint while in his vehicle in the parking lot of his apartment complex. Bennett testified at trial that he was in the process of moving out of his apartment at the time and was about to leave with another load in his vehicle. As he returned to his vehicle from his apartment, Bennett noticed a white four-door sedan with tinted windows and front-end damage parked next to his vehicle. Bennett observed that the sedan was occupied and that someone was smoking a cigarette or cigar inside of it. Bennett testified that after he entered and started his vehicle, a man tapped on his driver's side window, pointed a black handgun at him, and told him to hand over his money. Instead of complying, Bennett put his vehicle into reverse and backed out of his parking spot; however, when he attempted to shift into drive and escape, his vehicle would not move forward. At that point, the gunman was on the passenger side of Bennett's vehicle. He opened the front passenger door, pointed his handgun at Bennett, and again demanded Bennett's money. Bennett complied, handing

-1-

over approximately $183, and the assailant left in the white sedan in which Bennett, just moments before, had seen someone smoking. Bennett called the police and gave a description of his attacker as a black male, 5' 7" or 8" tall, wearing a gray hooded sweatshirt; Bennett also described the white sedan, including the front-end damage and tinted windows.

Shortly thereafter, police officers in the area spotted a white, four-door Chevrolet Impala with tinted windows and front-end damage being driven by a black male. The officers stopped the Impala and arrested defendant, who had $146 in his pockets. Upon searching the path traveled by defendant's vehicle, the officers found a black handgun by the side of the road. DNA taken from a hair stuck in the slide of the handgun matched defendant's DNA.[1] Defendant's fingerprint was also found on the passenger-side door handle of Bennett's vehicle, and defendant's DNA was found on a marijuana cigarette located near Bennett's rear passenger tire. Surveillance footage from Bennett's apartment complex showed a white sedan leaving the complex. Surveillance footage from a nearby business showed a white sedan coming from the direction of Bennett's apartment complex around the same time; the sedan turned onto the road and traveled in the same direction as defendant was driving when he was stopped.

Defendant was convicted and sentenced as described. This appeal followed. After he filed his claim of appeal, defendant requested and obtained from this Court two extensions of time to file his brief on appeal. Then, on December 9, 2019, defendant filed both his brief on appeal and a motion to remand for an evidentiary *Ginther*[2] hearing on the issue of his trial counsel's ineffectiveness. Both the brief in support of the motion and defendant's brief on appeal included a section entitled, "Offer of Proof." According to that Offer of Proof, which was unsworn and was signed (as part of a brief) only by defendant's counsel, defendant would testify, at an evidentiary hearing, that he was "carhopping" (which was described as checking vehicles for whether they were locked or occupied, and then taking anything of value from the unlocked and unoccupied vehicles) with another man, JM, on the night of the robbery, and that JM is similar to defendant in appearance. Defendant's Offer of Proof states that defendant would testify that he "believes that one of the cars that he may have 'carhopped' at some point that evening was the vehicle that belonged to [Bennett]." According to defendant's Offer of Proof, JM told defendant that he was going to rob an occupied vehicle at gunpoint, but defendant refused to participate. However, after JM committed the armed robbery of Bennett, JM attempted to enter defendant's vehicle. Refusing to be an accomplice, defendant drove away without JM and was arrested shortly thereafter. Defendant's Offer of Proof stated that defendant would admit to having thrown the handgun out his window when he realized that the police were following him, because he was a prohibited

---

[1] The parties stipulated at trial that defendant was precluded from possessing a firearm because of a previous felony conviction. Defendant's previous conviction was for unarmed robbery, MCL 750.530.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

possessor.[3] The Offer of Proof also stated that defendant would testify that his then-girlfriend, DG, saw JM commit the robbery and was prepared to testify to that at trial.[4]

Defendant asserted that he informed his trial counsel of the above information, but that counsel believed Bennett's inability to identify defendant would be sufficient to establish reasonable doubt without putting defendant on the witness stand, where he would be questioned about his prior conviction, and that his counsel believed that DG's relationship with defendant would undermine her credibility. A motion panel of this Court denied defendant's motion without prejudice to a case call panel granting the same.[5]

## II. STANDARD OF REVIEW

Whether trial counsel's performance was constitutionally deficient presents a question of constitutional law that we review de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Defendant did not move the trial court for a new trial or a *Ginther* hearing. Defendant moved this Court to remand for a *Ginther* hearing regarding his trial counsel's effectiveness, which this Court denied. Accordingly, with regard to whether defendant is entitled to a new trial, our review is limited to errors that are apparent on the record. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014); *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008). However, in the context of determining whether to remand defendant's case for a *Ginther* hearing, we may consider offers of proof and supporting exhibits presented by a defendant, even if those materials are not part of the record. See *People v Moore*, 493 Mich 933, 933; 825 NW2d 580 (2013); see also MCR 7.216(A)(4).

## III. ANALYSIS

Defendant argues that his trial counsel was constitutionally ineffective in three respects: (1) by failing to consult with experts in fingerprint and DNA analysis; (2) by failing to investigate defendant's assertion that he was "carhopping" with JM around the time of the robbery, which would have explained the presence of defendant's fingerprint and DNA at the scene; and (3) by failing to investigate and call defendant and DG as witnesses to testify that JM committed the robbery. We disagree.

Criminal defendants have the constitutional right to the effective assistance of counsel at trial. *People v Russell*, 471 Mich 182, 187-188; 684 NW2d 745 (2004). "Counsel is presumed to have been effective, and a defendant has the burden of establishing that counsel was not effective."

---

[3] Defendant's Offer of Proof states that "[a]t the time of filing of this Brief, counsel is awaiting a signed affidavit from [defendant] as to the above facts, which will be filed with this Court as soon as reasonably practicable." No such affidavit, signed or unsigned, has been filed.

[4] The Offer of Proof footnoted that "[u]ndersigned appellate counsel has attempted to reach out to [DG] and has been unable to independently verify this assertion." No affidavit from DG has been filed.

[5] *People v Thomas*, unpublished order of the Court of Appeals, entered January 29, 2020 (Docket No. 348572)

*People v Spaulding*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 348500); slip op at 9.  To prove that counsel was ineffective, a defendant must first prove that his or her counsel performed deficiently, i.e., "failed to meet an objective standard of reasonableness based on prevailing professional norms."  *Lopez*, 305 Mich App at 694 (quotation marks and citation omitted).  If a defendant proves that his or her counsel's performance was deficient, he or she must also prove prejudice, which is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. (quotation marks and citation omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018).  A defendant also bears the burden of establishing the factual basis for his claim.  *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018).

Defendant's first argument—that his counsel should have consulted with fingerprint and DNA experts—is unpersuasive.  "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy."  *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).  "We give defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case."  *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).  Further, there is "a strong presumption of effective counsel when it comes to issues of trial strategy."  *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).  Defendant is correct that the prosecution's case was dependent in a large part on fingerprint and DNA evidence, since Bennett could not specifically identify his attacker.  Without defendant's fingerprint and DNA, the only evidence linking defendant to Bennett's robbery was the fact that defendant's vehicle matched the description given by Bennett and that defendant was driving in the same direction the assailant was likely driving.  However, defendant offers no explanation as to what weaknesses in the prosecution's case could have been exposed had his counsel consulted with fingerprint and DNA experts.  Nor is there anything "apparent on the record" that makes counsel's alleged decision not to consult experts unreasonable; in fact, defense counsel seemed well-versed in evidentiary procedures and DNA evidence.  *Horn*, 279 Mich App at 38.  For example, defense counsel argued that an evidence technician may not have changed his gloves sufficiently while collecting evidence at the scene, creating a risk of cross-contamination, and he further reminded the jury that the DNA of four individuals, not merely of defendant, was found on the handgun.  Defendant has failed to show that his trial counsel's conduct was unreasonable.  *Id*.

Further, defendant makes no specific argument concerning prejudice, other than to note that the DNA and fingerprints were important to the prosecution's case.  Without an explanation as to how that evidence might have been challenged, we cannot say there is a reasonable probability that, but for his counsel's actions, the outcome of his trial would have been different.  *Id*.

Defendant's second and third arguments—that counsel should have investigated and presented to the jury defendant's claim that he was "carhopping" earlier that night with JM, and that it was JM who committed the armed robbery—are also unpersuasive.  As an initial matter, there is nothing in the record to support these arguments.  There is no reference in the record to any carhopping activities or to the presence of either DG or JM, and there is no indication that defendant ever informed his counsel of these possible defenses.  Therefore, on the existing record, defendant cannot carry his burden of establishing counsel's performance was deficient, let alone that it caused him prejudice.  *Id*.

-4-

However, even assuming, for the purposes of granting remand, that defendant informed his counsel of these alleged defenses, we hold that counsel performed reasonably. See *Moore*, 493 Mich at 933. "Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). But it is not clear what investigation counsel could have made with regard to these claims beyond listening to defendant's assertions. Despite defendant's claim that defense counsel failed to perform a reasonable investigation, defendant does not state what additional information further investigation would have uncovered beyond what he allegedly told his counsel directly. And because defendant does not elaborate, he has not established the factual predicate for his claim. *Muhammad*, 326 Mich App at 63.

To the extent defendant's argument is really more about the fact that counsel did not call either defendant or DG to testify, we hold that counsel performed reasonably. As stated, defense counsel has great latitude in determining whether and what witnesses to call at trial. *Payne*, 285 Mich App 190. Without an evidentiary hearing, there is no way to know why counsel advised defendant not to testify and did not call DG; however, we presume, absent evidence to the contrary, and particularly where, as here, defendant has never provided evidentiary support for the Offer of Proof contained within his briefs, that it was the result of sound trial strategy. *Id*. In this case, and again assuming that defendant told his counsel about the alleged carhopping, JM, handling the gun, and DG witnessing the armed robbery, defense counsel could have reasonably concluded that the risks of having defendant and DG testify outweighed the benefits. As noted, Bennett was unable to identify defendant, a fact that defense counsel emphasized at trial. Defense counsel also elicited testimony that the age of a fingerprint could not be established, that a light touch was sufficient to make a fingerprint, and that defendant lived in the same apartment complex as Bennett, potentially explaining both the fingerprint evidence and presence of the marijuana cigarette with defendant's DNA near Bennett's car. Further, defense counsel also called defendant's mother to testify that she had regularly seen another vehicle similar to the one driven by defendant in the apartment complex parking lot. In his closing argument, defense counsel emphasized that Bennett not only never identified defendant, but that he never specifically identified the perpetrator's vehicle as an Impala, and only identified it as a white sedan, and further pointed out that DNA from four people had been recovered from the handgun, arguing that this created reasonable doubt about whether defendant was the person who had committed the robbery, even if he had touched the weapon at some point.

We conclude that defense counsel's trial strategy was reasonable, given the risks of putting defendant and DG on the witness stand and the strong presumption that counsel performs reasonably on matters of trial strategy. *Odom*, 276 Mich App at 415. Had defense counsel called defendant and DG to the witness stand, he would have relied on the jury believing defendant, who would have admitted to committing criminal acts in that parking lot that same night, and a biased witness, his then-girlfriend, in the face of DNA evidence and absolutely no other evidence of JM's

presence in the parking lot that night. Defendant therefore cannot establish that his counsel performed deficiently, let alone that it affected the outcome of the proceedings.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello